## HAVEN & a. v. EMERY & a.

It was agreed between the Concord and Portsmouth Railroad and the plaintiffs, that the plaintiffs should deliver to the road a certain quantity of iron rails ; that the road should lay them in a designated part of their track, and that, upon the payment by the road of a specified price, the rails should become the property of the road ; but that, until such payment, they should remain the property of the plaintiffs ;—*held*, that the rails, having been laid in the track under this bargain, did not become the property of the road until they were paid for, and that the rails, not having been paid for, the plaintiffs were entitled to hold them against subsequent mortgagees of the road, who had notice of the plaintiffs' interest when they took their mortgage.

That notice to trustees for the holders of bonds issued by the road would charge the bond-holders with notice.

BILL IN EQUITY. The bill stated that on the 5th of January, 1850, the plaintiffs entered into a written contract with the Portsmouth and Concord Railroad, by which it was agreed that the plaintiffs should purchase twelve hundred tons of railroad iron, and deliver it to the road on a credit of two years from the delivery ; that the railroad should pay the cost and charges of the iron and ten per cent. commission, within two years ; that the title to and property in the iron should remain in the plaintiffs until it was paid for ; that the iron should be laid by the road in a separate part of their track, and a cer-

tificate given by the road, showing in what part it was laid ; that if the iron were not paid for according to the agreement, the plaintiffs should have a right to take possession of the iron wherever it might be, and in whatever condition, and sell it ; and in case the proceeds were not sufficient to pay the agreed price, that the railroad should pay the deficiency ; that each of the plaintiffs should pay, towards procuring the iron, the sum subscribed by him, and that a portion of the iron should be bought and delivered when twenty-five thousand dollars were subscribed ; that on the 29th of January, 1850, more than twenty-five thousand dollars were subscribed.

The railroad iron was purchased and delivered to the road previous to June 29, 1850, to the amount of five hundred and ninety-three tons, one quarter, and ten pounds, and of the value of $26,415.20, and certificates given accordingly ; that the iron was laid in track under the agreement in a separate part of the road, and that part designated by a certificate in writing ; that, with the exceptions of two claims for two subscriptions, which have been settled by the road, the iron is not paid for, and remains in the track of the road.

The bill sets out the act of the Legislature and the mortgage of the Portsmouth Railroad, made under it on the 20th of August, 1850, as in the case of *Pierce & a.* v. *Emery & a.*, 32 N. H. 484 ; the Portsmouth Railroad and the same trustees are sued as defendants ; states the same acts and proceedings of the trustees and the directors as in the preceding case, and prays for the same relief.

The bill states that the trustees, when they took their mortgage of the road, and also many of the bond-holders, had notice of the interest of the plaintiffs.

The defendants demurred to the bill, and the cause was heard on the demurrer.

*Marston* and *Hatch*, for the plaintiffs.

*C. L. Woodbury* and *W. H. Y. Hackett*, for the defendants.

PERLEY, C. J.   The railroad had authority to make the contract relied on by the plaintiffs.   We are unable to perceive that there can be any more objection to the corporation having possession of the iron, and using it on a conditional sale, or on a loan, than to their buying the iron on credit.

As between the parties to the contract, the intention is plain that the property should not vest in the road until the iron was paid for ; and that intention will prevail between the parties, unless the laying of the rails in the track necessarily made them an intrinsic and inseparable part of the road, in spite of the agreement, which reserved the property in them to the plaintiffs.

In this case the rails were laid, according to the provisions of the agreement, in a particular part of the track, and that part designated by a written certificate : there is, therefore, no difficulty in tracing and identifying the iron which the plaintiffs claim.   It is not like a case where bricks, or nails, or other materials are used in the construction of a house, and so incorporated with the building that they cannot be separated and traced.   *Cross* v. *Marston,* 17 Vt. 540.

We see nothing in the way in which the rails are annexed to the road, or in the manner in which they are used upon it, that incorporates them more essentially with the road than in the case of a house or a fence set on land of another, with his assent, and under an agreement that the house or fence shall remain the personal property of the original owner.   And a house built on land of another, or a fence set on his land, with his assent, and under an agreement that the house or fence shall remain the personal property of the party who places it on the land, does not become annexed in law to the land.   The agreement of the parties in such case supersedes the general rule of the law.   *Wells* v. *Bannister,* 4 Mass. 415 ; *Doty* v. *Gorham,* 5 Pick. 487 ; *Osgood* v. *Howard,* 6 Greenl. 452 ; *Russell* v. *Richards,* 1 Fairfield 429 ; *Hilborne* v. *Brown,* 3 ditto 162 ; *Leland* v. *Gasset,* 17 Vt. 408 ; *Mott* v. *Palmer,* 1 Comstock 564 ; *Wood* v. *Hewitt,* 8 Adol. & Ellis N. S. 913.

As between the parties, then, to this contract, we are of

opinion that the rails remain the property of the complainants. Has the right of the complainants been divested or affected by the mortgage to the trustees for the bond-holders ?

The contract was made and fully executed on the part of the complainants by delivery of the iron to the railroad before the mortgage was made to the trustees, and before the act was passed which authorized the mortgage. Whether the rails were actually laid in the track before the mortgage, does not clearly appear from the statement of the bill, and, in the view which we take of the case, is not material.

There are some cases which might seem to carry the idea that a purchaser of land would be bound by an agreement of the seller, which gives to what would otherwise be part of the land the character of personal property, and vested the title to it in another, though the purchaser had no notice of the agreement. *Mott* v. *Palmer*, 1 Comstock 564.

We are not yet prepared to acquiesce in such a doctrine. Primarily, and in the absence of notice to the contrary, the purchaser would seem to have a right to suppose that he was buying with all the incidents and appurtenances which the law, as a general rule, annexed to his purchase ; and we should hesitate before we held that he could be affected by a private agreement, not brought to his knowledge, which changed the natural and legal character of the property. But if the purchaser buy with notice of the agreement, and of the party's rights under it, he will be bound by it. Are the bond-holders charged with the notice which the bill alleges to have been given to the trustees ?

On grounds which are explained in the case of *Pierce & a.* v. *Emery*, 32 N. H. 484, we think that they are ; and perhaps there are in the facts of this case additional reasons for charging the bond-holders with the notice given to their trustees. The complainants had performed their part of the agreement, and delivered the iron into the possession of the railroad before the mortgage was made or the act passed. The law provided no method of giving general notice by registration or publication. It was wholly impracticable to give actual notice to the bond-

holders themselves ; notice to the trustees was all that the nature of the case allowed. The bond-holders claim through the trustees under a law which was passed after the agreement with the plaintiffs was made, and after they had parted with the iron in execution of the agreement. If notice was given by the plaintiffs to the trustees, it was all the notice that could be given, and the plaintiffs have been guilty of no neglect.

*The demurrer must be overruled.*