Rockingham
No. 6684

ASSOCIATION OF PORTSMOUTH TEACHERS

v.

PORTSMOUTH SCHOOL DISTRICT

November 30, 1973

*McLane, Carleton, Graf, Greene & Brown, Jack B. Middleton* and *Robert A. Wells (Mr. Middleton* orally) for the plaintiff.

*John C. Driscoll,* by brief and orally, for the defendant.

GRIFFITH, J. This is an action brought on behalf of certain Portsmouth high school teachers by the Association of

Portsmouth Teachers authorized by collective bargaining agreement with the defendant to act as exclusive representative of all Portsmouth teachers. All questions of law raised by the pleadings and an agreed statement of facts were reserved and transferred by *Morris, J.*

Beginning on October 21, 1970, and ending on November 12, 1970, it was necessary, on decision of the city marshall, to close Portsmouth High School on 12 separate days because of bomb threats. The normal school day began at 7:58 a.m. and ended at 2:48 p.m., but on these 12 days classes were dismissed at various times ranging from 7 hours to less than 2 hours before the normal closing time. New Hampshire school law, RSA 189:24, requires a minimum of 180 school days in a year and the bomb scare left the defendant with a substantial number of classes to be made up. The Portsmouth Board of Education proposed a schedule to accomplish this which was acceptable to the State commissioner of education. This schedule provided, along with lengthened class days, for sessions to be held on Saturday, January 16, 1971, and Saturday, January 23, 1971. In its bill in equity the plaintiff seeks for the teachers who worked on these two Saturdays 1/183 of their annual salary for each of these days.

The only questions before us according to the pleadings and briefs are those presented by the defendant's two motions to dismiss. The defendant's first motion claims that the individual teachers' contracts required them to work on the two Saturdays and that these were not days in excess of their contract obligations. The second motion for dismissal states that the make-up sessions were by order of the commissioner of education and since neither plaintiff nor any teacher appealed to the State board of education from that order under the provisions of RSA 186:12, they are barred from maintaining this action.

Considering the second motion first we note that RSA 186:12 provides that "[a]ny person aggrieved by an order or finding of the commissioner of education may appeal therefrom to the state board, which shall investigate the matter in any way it sees fit and its order shall be final." In

our opinion the approval by the commissioner of the Portsmouth board's make-up schedule does not constitute an "order or finding" within the purview of RSA 186:12. Instead it would appear to be a decision by the board requiring approval of the commissioner but not requiring participation by the plaintiff and from which it had no right of appeal under RSA 186:12. It should be noted further the plaintiff's claim here is not that the Saturday scheduled classes were improperly ordered by the board but that work performed by the teachers on those days is in excess of the number of teaching days their annual contract pays them for.

In addition to the general contract between the plaintiff association and the defendant board providing pay schedules and general working conditions each teacher signs a standard individual teaching contract. The significant language in this contract on which defendant relies is the statement: "That the school year is to be at least 183 school days between September 1st and June 30th." It is agreed that including the 12 bomb scare days on which teachers were present and prepared to teach a full day the additional two Saturdays brought their total working days to 185. Defendant argues that the language in the individual teaching contract establishes only the minimum number of school days and the board at its option may require additional working days which the teacher's individual teaching contract requires them to work without additional compensation.

In the interpretation of contracts a result which makes the agreement fair and reasonable will be preferred to one which leads to harsh and unreasonable results. 4 S. Williston, Contracts § 620, at 748-49 (3d ed. W. Jaeger 1961). The interpretation urged by the board would place the teachers at the mercy of the board and "should, if at all possible, be avoided." *Griswold v. Heat Corporation,* 108 N.H. 119, 124, 229 A.2d 183, 187 (1967).

It is well established "that the proper interpretation of a contract is that which will make it speak the intention of the parties at the time it was made." *Peter Salvucci & Sons, Inc. v. State,* 110 N.H. 136, 144, 268 A.2d 899, 905 (1970); *Griswold v. Heat Corporation,* 108 N.H. 119, 229 A.2d 183

(1967). There was more to the agreement of the parties than the individual teacher's contract. It included not only the general contract covering all teachers entered into by the association but also the school department calendar adopted by the board for the year 1970-1971. This calendar, adopted before the signing of individual teacher's contracts, provides for 182 days of instruction allowing two days for stormy weather school closing in order to provide 180 full days of attendance. The calendar states that "Teachers' contracts are for 183 days, so they are to report on September 8, 1970 and will remain for one day after the closing of school in June, 1971." The school calendar established the school year contemplated by the parties at the time of the execution of the individual teacher's contracts and based on probabilities the teachers are required to teach for 183 days. *Berke Moore Co. v. Phoenix Bridge Co.,* 98 N.H. 261, 264-65, 98 A.2d 150, 154 (1953); *see Aldrich v. Beauregard & Sons,* 105 N.H. 330, 336, 200 A.2d 14, 18 (1964). In addition it appears that teachers who called in sick on bomb scare days were charged with sick leave or if that were exhausted were charged 1/183 of their annual salary. The fact that the parties treated the teachers school year as 183 days was a practical construction by the parties contrary to the claim of the defendant. *American Fed. AFL-CIO v. Dover,* 109 N.H. 299, 300-01, 249 A.2d 681, 683 (1969); *Bogosian v. Fine,* 99 N.H. 340, 342, 111 A.2d 190, 192 (1955).

We are of the opinion that considering all the acts and agreements between the parties their intent was to contract for a teaching year of 183 days. The additional two Saturdays were beyond the teachers' obligations under their contract and since they performed them at the request of the defendant they are entitled to be compensated on a quantum meruit basis. It is not clear from the transferred case whether any matters remain to be determined at the trial level but the motions to dismiss for the reasons stated therein are denied.

*Remanded.*

All concurred.