**WO CO. (Formerly NYTCO Leasing, Inc.), Plaintiff, Appellant,**

v.

**BENJAMIN FRANKLIN CORPORATION, Defendant, Appellee.**

No. 77-1070.

United States Court of Appeals, First Circuit.

Argued April 7, 1977.

Decided Sept. 30, 1977.

Richard B. Couser, Concord, N. H., with whom Orr & Reno Professional Ass'n, Concord, N. H., was on brief, for plaintiff, appellant.

Bernard A. Dwork, Boston, Mass., with whom John C. Ottenberg and Barron & Stadfeld, Boston, Mass., was on brief, for defendant, appellee.

Before COFFIN, Chief Judge, MILLER, Judge, * CAMPBELL, Circuit Judge.

LEVIN H. CAMPBELL, Circuit Judge.

In this diversity action for conversion of property claimed as collateral for a purchase price financing arrangement, WO Co. sought damages against the Benjamin Franklin Corporation (Franklin), which had sold the property to itself at a foreclosure sale pursuant to a competing security interest. Franklin answered that its claim to the disputed property was senior to WO Co.'s, but that in any event WO Co.'s interest was limited to the price paid for personal property sold at the latter of two consecutive foreclosure sales. After hearing some evidence concerning what the parties meant by a stipulation entered into before the foreclosure sales, the district court granted partial summary judgment for Franklin and bound WO Co. to the $30,000 realized at the second sale. At the end of the trial, the court entered judgment for WO Co. in the amount of $30,000, which WO Co. has appealed as inadequate. The sufficiency of this judgment is the only issue on appeal.

On August 17, 1972, Hagad Co., a five-man partnership formed to open a Holiday Inn in Campton, New Hampshire, mortgaged the premises of the new motel with Franklin in return for $1,200,000 construction financing. The mortgage included

as part of the realty all portable or sectional buildings, heating apparatus, plumbing, mantels, storm doors and windows, oil burners, gas and oil and electric fixtures, screens, screen doors, awnings, and other fixtures of whatever kind and nature, on said premises, or hereafter placed thereon prior to the full payment and discharge of this mortgage, insofar as the same are or can by agreement of the parties be made a part of the realty.

The mortgage was recorded September 8. On September 12, Hagad gave additional security to Franklin in the form of a chattel mortgage covering

All the furniture, furnishings and equipment, including all replacements, additions, and substitutions thereto, located or to be located in the motel . . . .

* Hon. Jack R. Miller of the United States Court of Customs and Patent Appeals sitting by designation.

Franklin's chattel mortgage was filed with the Secretary of State of New Hampshire and the Town Clerk of Campton on October 12 pursuant to the UCC.

NYTCO Leasing, Inc. (NYTCO), the predecessor to WO Co., entered into a purchase money financing agreement with Hagad on September 25, 1972. NYTCO's security agreement, which was cast in the form of a leasing arrangement, had a seven year term and provided the nominal lessee, Hagad, an option to buy the property at the end of the term for "no more than 10% of the original equipment cost." The property covered by the agreement included bedroom furnishings, kitchen equipment, the front desk, two bars and bar furnishings, carpeting, cash registers, dining room furnishings, drapes, an internal telephone system, and various other furnishings appropriate to a motel. The security agreement included a clause stating:

It is mutually agreed that if leased [property] is attached to the real estate, it shall at no time become, or be considered a part of the real estate to which it is attached, but will at all times during the term of this Agreement remain the personal property of the Lessor.

NYTCO filed the leasing agreement with the Secretary of State on January 18, 1974, long after the time for obtaining priority over Franklin under N.H.Rev.Stat.Ann. § 382–A:9–312. NYTCO expended $362,-504.62 for that portion of property leased to Hagad which is in dispute here.

On September 21, 1972, four days before Hagad signed the agreement with NYTCO, Franklin had sent a letter to Hagad concerning the contemplated purchase money financing of the furnishings:

Please be advised that the Chattel mortgage and financing statements under the Uniform Commercial Code which you have executed to this Corporation on the equipment to be installed in the Holiday Inn in Campton, N.H. shall be subject only to the purchase money financing of said equipment so that this Corporation will hold a second position with reference to the Chattels and equipment.

Although Franklin contended at trial that this letter constituted only a statement of intent, the district court found it to be an effective subordination agreement.

The motel at Campton never made a profit, and on May 1, 1974, Hagad, by that time a corporation, filed a petition for rearrangement under Chapter XI of the Bankruptcy Act. Matters did not improve, and on March 27, 1975, Hagad filed for bankruptcy and was adjudicated a bankrupt. Franklin applied to the bankruptcy court for permission to foreclose its real estate and chattel mortgages and on April 1 published notices regarding the sales. The notice of the real estate sale stated in part:

Said premises are conveyed subject to and with the benefit of easements, restrictions, agreements and reservations of record, if any there be, insofar as the same may be in force and applicable.

Notice of the personal property foreclosure sale described the covered property as:

All tangible property of the Debtor however characterized or described, including without limitation, all equipment, inventory, machinery, furniture and furnishings and motor vehicles, wherever located, and whether now owned or hereafter acquired.

NYTCO also requested permission to foreclose its security agreement with respect to the various furnishings. Negotiations ensued between the two creditors concerning a joint sale of the mortgaged premises and collateral, as the motel had a higher market value if fully furnished and the furnishings were worth much more if left in the motel. There was testimony that during these negotiations Mr. Walter Richey, President of NYTCO (and later President of WO Co.), said that the property it claimed, if removed from the premises, would have a value to his firm of only $30,000. While details of the negotiations remain murky, there was evidence that because they could not reach any agreement Franklin and NYTCO signed a stipulation permitting a sale to go forward while reserving their rights. The stipulation read:

## STIPULATION

Benjamin Franklin Corporation and Nytco Leasing, Inc. agree as follows:

1) There are conflicting claims between these two parties as to their respective rights in and to certain personal property situated on the premises of the bankrupt in Campton, New Hampshire.

2) It is to the mutual benefit of the parties that the said personal property be offered for sale at the same time as the real estate in Campton, New Hampshire on which the business of the bankrupt was conducted, without prejudice to the rights of either party.

3) Nytco Leasing, Inc. agrees that Benjamin Franklin Corporation may sell said personal property in conjunction with or immediately following the sale of said real estate without waiving any claim or right, title and interest in and to said personal property that it has.

4) Benjamin Franklin Corporation agrees that the sale of said personal property, if sold, will not prejudice any claim or right, title or interest Nytco Leasing, Inc. has in and to said personal property, which claims and rights may be adjudicated in any forum having jurisdiction of the claims subsequent to the sale.

The sales went forward on April 25. Franklin without competition bid $750,000 for the realty and $30,000 for the personalty. Before the personal property sale, Franklin's attorney directed the auctioneer to read through the itemized list of property covered by NYTCO's lease, apparently because some reservations were entertained about the efficacy of the sale as to covered items which had become attached to the realty. Richey and counsel for NYTCO attended the auction but made no effort to bid. Richey testified that he believed the stipulation fully preserved NYTCO's rights in the property, so that he did not need to bid.

Immediately before the sale, both NYTCO and Franklin had attempted to obtain an appraisal of the personal property installed in the Campton motel. NYTCO hired Gary Gabrielson, a former employee of the company that supplied Holiday Inns with its furnishings, who visited the premises on April 24 and 25. Gabrielson attempted to evaluate the worth of the property in place, as used by the owner of the motel, by estimating the "reproduction cost less depreciation" of the property. He determined the cost of the property at past rates, added eight percent for shipping and eleven percent for appreciation over the two-and-a-half years since purchase, and then subtracted depreciation on a straight line basis with different useful lives calculated for various categories of property. The final figure was $242,495, of which $73,760 was attributed to the items WO Co. now contends were fixtures. Gabrielson informed Richey of his estimate before the foreclosure sale. Gabrielson also testified that his estimate was conservative to the extent the property might have longer useful lives than those attributed to them because of the relatively slight use received while the motel operated.

After learning of NYTCO's appraisal effort, Allen Goodman, counsel for Franklin, decided to obtain another opinion. Samuel Richard, a professional appraiser with some fifty years experience who specialized in personal property, inspected the premises on April 24, 1972. He was instructed to estimate the value of the furnishings if they were to be removed from the premises. Richard came up with a figure of $100,000, which did not include either the cost of removing the property from the motel or the value of certain items which Richard regarded as fixtures and therefore not personal property. Among the excluded items were the carpeting, front desks, two bars, the telephone system, the walk-in refrigerators and one walk-in freezer. Goodman knew of Richard's estimate before Franklin bid at the foreclosure sales.

Franklin had insured its mortgages with the Commercial Loan Insurance Corporation, which directed Franklin how to bid at the sales. At first the insurer told Franklin to open at $1,030,000 and follow the bidding up to $1,170,000, but right before the sale the instructions were modified to give Franklin discretion as to the opening bid.

As it turned out, Franklin exercised its discretion well. The Campton motel, for which Franklin paid a total of $780,000 at the foreclosure sales, was sold to third parties in June 1975 for $1,075,000.

NYTCO for its part did not go entirely uncompensated. In 1974 it brought an action against the debtor partners in their personal capacity for payments owed under the lease. In January 1976 the suit was settled for $95,000 in cash and $40,000 in notes, $30,000 of the latter to be cancelled on a pro rata basis to the extent NYTCO's recovery against Franklin in this action exceeded $150,000. Before default, NYTCO had received payments from Hagad totalling $102,390.53.

At trial the district court determined that NYTCO's arrangement with Hagad constituted a secured sale rather than a lease, that NYTCO had failed to perfect its interest in a timely manner to obtain priority over Franklin's mortgage, but that Franklin's letter to Hagad constituted a valid and binding subordination agreement permitting NYTCO to recover against the collateral ahead of Franklin. The court found that the stipulation limited the recovery of WO Co., as NYTCO's successor, to the price realized at the personal property foreclosure sale. The court refused to credit WO Co. for any property that passed at the realty sale, both because WO Co. had not satisfied the court that any of the disputed property had become part of the realty and because the notice of property to be sold at the second sale purportedly embraced all of the disputed property.

The questions before us are first, whether the trial court erred in interpreting the preforeclosure stipulation as limiting its signers to the prices obtained at the foreclosure sales, and second, whether WO Co. should be compensated for any fixtures in which it had senior interest that may have passed at the sale of real estate.

Whether WO Co. agreed to accept the results of the foreclosure sale is a matter of interpretation of the stipulation signed by WO Co. and Franklin. WO Co. contends that the only logical construction that can be placed on the provision that "the sale of said personal property, if sold, will not prejudice any claim or right, title or interest Nytco Leasing, Inc. has in and to said personal property . . . ." is that WO Co. agreed not to tie up the property in litigation before sale but reserved the right to press its claim against Franklin as to both priority and value unprejudiced by the results of the sale. WO Co. points out that nothing in the stipulation expressly ties the value of its interest to the results of the sale. It argues that Franklin whose interest in the realty dwarfed NYTCO's claim to the personalty, was the only party expected to bid at either sale, and that NYTCO would not knowingly grant Franklin the unchecked power to limit the potential recovery.

The district court took a different view of the stipulation. Ruling that WO Co.'s recovery would be limited to the proceeds of the sale, it noted that there was nothing in the stipulation relative to value, and that both sides were represented by counsel and could have taken further steps to clarify their rights if they had wished. The court also stressed Richey's concession in earlier negotiations that NYTCO could realize only $30,000 on the property if it were removed from the motel.

The stipulation is not a model of clarity. By stating that the sale would not "prejudice" any claim of NYTCO, it could conceivably, as WO Co. contends, imply that NYTCO would retain the right, after the sale, to resolve valuation as well as ownership in any forum it believed to be appropriate. The document expressly contemplated litigation subsequent to the sale. But the contrary interpretation, argued by Franklin and accepted by the district court, seems to us more reasonable. The stipulation nowhere speaks of reserving the question of value. Instead, it speaks of reserving "any claim or right, title or interest . . . in and to said personal property." Once the sale had occurred, NYTCO obviously could not retain any claim to the property itself but only to the proceeds received for it. By agreeing to the sale while leaving value up

in the air, the parties seemingly intended that the sale price would control as to value and that NYTCO meant to reserve for future negotiation or litigation only the issue of priority. The sale would be a more certain indication of the value of the property than any subsequent appraisal evidence. A court would have been hard pressed to ascertain a market value for property which had only one logical purchaser, but the sale provided both parties an opportunity to create a market and bargain over value. NYTCO easily could have bid at the sale, balancing the risk of loss inherent in a failure to come to an agreement with Franklin against Franklin's desire to keep the property intact rather than refurbish the motel at great cost. It therefore was only logical that the parties not preserve the right to litigate value, but only title.

 Interpretation of the stipulation is primarily a matter of ascertaining the intent of the parties. The intent of the parties in turn is a question of fact, to be determined by the district court based on the evidence before it. *Hogan v. Lebel,* 95 N.H. 95, 58 A.2d 321 (1948); *Kendall v. Green,* 67 N.H. 557, 42 A. 178 (1894). Although the court's determination as to the meaning of the stipulation came early in the trial and before much evidence on the value of the property had been introduced, we cannot say that the court's construction was clearly erroneous. *Cf. Martin v. Vector Co., Inc.,* 498 F.2d 16, 22 (1st Cir. 1974). Evidence already heard, particularly the testimony as to Richey's opinion of what was at stake, is consistent with the court's ruling. The result did not leave NYTCO at the mercy of Franklin, *see Association of Portsmouth Teachers v. Portsmouth School District,* 113 N.H. 659, 312 A.2d 573 (1973); *Griswold v. Heat, Inc.,* 108 N.H. 119, 229 A.2d 183 (1967), as NYTCO had sufficient opportunity to protect its rights by bidding at the sale. The ruling of the district court that NYTCO thought the stipulation limited its rights to a claim on the proceeds of the sale must therefore stand.

Plaintiff also argues that even if it is bound to the results of the sale, a portion of the proceeds from the first sale ought to be attributed to its recovery. It claims that a portion of the property in which it had an interest became fixtures and thus a part of the realty that passed at the first sale. The district court ruled that WO Co. had failed to prove any of the disputed property had become part of the realty, that Richey had remained silent at the sales and made no inquiry whether any of the claimed property was passing as realty, and that the personal property foreclosure sale notice embraced all of the disputed property.

In the last respect, the district court apparently was in error. The published notice of the second sale tracked the language of Franklin's personal property mortgage, which did not cover fixtures. It referred to "tangible property", including furnishings, furniture, and equipment, but nowhere indicated inclusion of property which had become affixed to the realty. The complete list of WO Co.'s collateral was read before the personal property sale, but by that time the real estate sale had occurred and whatever property involved would have passed. A bona fide purchaser of the realty, lacking notice of the terms of Franklin's and WO Co.'s exact arrangements with Hagad, would not have been prevented from acquiring whatever fixtures existed.

 The Uniform Commercial Code, as it is in effect in New Hampshire, defers to state law for the definition of fixtures. N.H.Rev.Stat.Ann. § 382–A:9–313(1). Under New Hampshire law, the character of the object and realty are, of course, critical but so also is the intent of their respective owners. In *Dana v. Burke,* 62 N.H. 627 (1883), the Supreme Court of New Hampshire stated the classic test:

> [T]o divest a chattel of its character as personalty and make it a part of the realty, there must be an actual or constructive annexation to the realty with the intention of making it a permanent accession to the freehold, and an appropriation or adaptation to the use or purpose of that part of the realty with which it is connected.

*Id.* at 629. Among these elements, intent to make a permanent accession to the freehold seems preeminent. Several early New Hampshire cases indicate that the same property can become attached to the realty or not, depending on the intent of respective owners, unless the personalty becomes an intrinsic, inseparable and untraceable part of the realty. *Cochran v. Flint,* 57 N.H. 514 (1877); *Haven v. Emery,* 33 N.H. 66 (1856). The only limitation on this rule has been where third parties without notice of the intent acquire some interest in the realty under circumstances permitting a reasonable belief that the property had become affixed to the realty.

Applying New Hampshire law to the facts of this case, it seems clear that none of WO Co.'s collateral was sold at the first foreclosure sale. NYTCO and Hagad expressly agreed to treat the property as personalty, an agreement New Hampshire law would implement to the extent the goods involved were separable and traceable. NYTCO continued to give expression to this intent as late as the signing of the stipulation, where it referred to the subject matter of the dispute as "certain personal property." In addition, Franklin clearly had notice of this intent, as a copy of the lease between NYTCO and Hagad had come into its possession before the foreclosure sales. Under the circumstances, Franklin fairly can be said to have relied on the expression of intention by NYTCO not to regard any of the property as fixtures.

*Affirmed.*