Public Employee Labor Relations Board
No. 96-107

# APPEAL OF LONDONDERRY SCHOOL DISTRICT

## (New Hampshire Public Employee Labor Relations Board)

### March 23, 1998

*Soule, Leslie, Kidder, Zelin, Sayward & Loughman,* of Salem (*Robert P. Leslie* and *Michael S. Elwell* on the brief, and *Mr. Leslie* orally), for the petitioner.

*James F. Allmendinger,* of Concord, staff attorney, NEA-New Hampshire, by brief and orally, for the respondent, Londonderry Education Association.

BRODERICK, J. The Londonderry School District (school district) appeals a decision by the public employee labor relations board (PELRB) holding that occupational therapists (therapists) are members of the bargaining unit represented by the Londonderry Education Association (LEA). We reverse.

In 1974, the LEA and the school district entered into a collective bargaining agreement (CBA) for a two-year term. The CBA contained the following recognition clause:

A. *The Londonderry School Board, hereafter referred to as the Board, hereby recognizes the Londonderry Education Association, hereafter referred to as the Association, as the exclusive representatives for purposes of collective negotiation for all professionally certified personnel* with the exception of the following exclusions: superintendent, assistant superintendents, principals, assistant principals, directors, teacher consultants, business administrators, persons employed by the State Board of Education as department heads, teaching principals, teaching assistant principals who teach three (3) periods or less per day or fifty (50) percent or less time per week.

B. Unless otherwise indicated, *the term "teacher" when used hereinafter in this Agreement shall refer to all professionally certified personnel employed by the School Board and represented by the Association* in the negotiating unit as above defined. Registered nurses hired subse-

quent to January 1, 1974, and who are not certified as School Nurse Teachers shall not be members of the bargaining unit until they complete their certification requirements. (i.e. R.N. + 30 college credits, and state certification as Nurse Teacher.) Such nurses shall be compensated via a separate salary schedule. Certified school nurse teachers who are members of the bargaining unit shall be paid on the B.A. Track of the teachers salary schedule. Any reference to male teachers shall include female teachers.

C. This recognition shall not preclude the Board from communicating with, consulting, or dealing with any individual teacher or groups of teachers for any purpose the Board shall deem desirable in the discharge of its responsibilities.

(Emphasis added.)

In 1976, the PELRB certified the LEA as the unit's exclusive representative. *See* RSA 273-A:8 (1987). In 1992, the PELRB modified the bargaining unit on petition of the LEA to include the position of school psychologist.

The school district hired its first therapist in 1980 and, since 1988, has hired several others. All the therapists are licensed by the New Hampshire Board of Registration of Medicine under RSA 326-C:3 (Supp. 1997) and are members of the American Occupational Therapy Association (AOTA), a voluntary national organization. None are certified by the State Board of Education. The therapist hired in 1980 has always received salary and benefits comparable to those received by members of the bargaining unit, while the remaining therapists are paid by the hour and receive no sick leave, insurance, or benefits.

In November 1993, the LEA, apparently believing that therapists were members of the bargaining unit, filed a grievance claiming that all therapists hired since 1988 were entitled to the same salary and benefits as others in the unit. The school district asserted that the arbitrator lacked jurisdiction to hear the grievance because therapists were not members of the bargaining unit. The arbitrator recessed the proceedings pending a decision by the PELRB on the inclusion of the therapists in the unit.

In July 1995, a PELRB hearing officer ruled that all therapists are members of the bargaining unit. The hearing officer concluded that the therapist hired in 1980 was a member because she received salary and benefits similar to those of teachers in the unit. The remaining therapists were deemed members because, despite their

significantly different compensation, they performed the same duties as the original therapist. All therapists were found professionally certified through their membership in AOTA. Following the school district's appeal to the full membership of the PELRB, the hearing officer's decision was affirmed. The school district's rehearing motion was denied, and this appeal followed.

█ Our standard of review is governed by RSA 541:13 (1997). As the appealing party, the school district must show that the PELRB's decision is contrary to law or, by a clear preponderance of the evidence, unjust or unreasonable. *See* RSA 541:13; *Appeal of AFSCME Local 3657*, 141 N.H. 291, 293, 681 A.2d 100, 102 (1996). The PELRB's findings on questions of fact are deemed *prima facie* lawful and reasonable. RSA 541:13; *Appeal of Prof. Firefighters of E. Derry*, 138 N.H. 142, 145, 635 A.2d 1352, 1354 (1993).

█ The composition of a bargaining unit is limited by law to those positions identified in the recognition clause at the time the original unit is certified by the PELRB and by any subsequent modifications approved by the PELRB. *See* RSA 273-A:8 ("The board . . . *shall determine* the appropriate bargaining unit . . . *when petitioned to do so* under RSA 273-A:10." (Emphasis added.)); N.H. ADMIN. RULES, Pub 302.05; *see also, e.g., Appeal of Bow School District*, 134 N.H. 64, 66, 588 A.2d 366, 367-68 (1991) (tracking creation and subsequent history of bargaining unit); *cf. Association of Portsmouth Teachers v. Portsmouth School Dist.*, 113 N.H. 659, 661, 312 A.2d 573, 575 (1973) (interpreting contract according to parties' intent at time of formation). When the PELRB recognized the LEA, it certified the "grandfathered" unit identified in the recognition clause of the 1974 CBA, which existed prior to the effective date of RSA chapter 273-A. *See State Employees Ass'n v. N.H. Pub. Employee Labor Relations Bd.*, 116 N.H. 653, 655-56, 366 A.2d 494, 496 (1976). Since then, the bargaining unit has been modified by petition just once, to include the position of school psychologist.

Our focus, therefore, is upon the language of the recognition clause, which we review *de novo*. *See Estate of Frederick v. Frederick*, 141 N.H. 530, 532, 687 A.2d 711, 713 (1996). The recognition clause limits the bargaining unit to "professionally certified personnel." A facial review of the recognition clause, however, indicates that while state certified teachers apparently are included, *see* RSA 186:11, X(a) (1989), the meaning of "professionally certified personnel" is not certain.

■ Thus, we consider parol evidence of the parties' intentions in limiting the bargaining unit. *See McMullin v. Downing*, 135 N.H. 675, 678, 609 A.2d 1226, 1229 (1992). Although the LEA had the burden of proof before the PELRB, *see* N.H. ADMIN. RULES, Pub 201.02(b), the record is not informed by any historic information on the parties' intentions in 1974 or 1976 on the composition of the bargaining unit, *see Association of Portsmouth Teachers*, 113 N.H. at 661, 312 A.2d at 575. Therefore, the intended scope of "professionally certified personnel" cannot be readily or clearly discerned.

■ The subsequent history of the bargaining unit further undermines the PELRB's determination that therapists are included. *Cf. C & M Realty Trust v. Wiedenkeller*, 133 N.H. 470, 475, 578 A.2d 354, 357 (1990) (considering parties' subsequent conduct in interpreting contract). Since its inception, the bargaining unit has not been modified to include therapists. Moreover, the record indicates that the LEA itself has not always considered therapists in the bargaining unit. When hired, each therapist signed a separate contract with the school district. Had the LEA believed that therapists were members of the bargaining unit, it would have attempted to negotiate these contracts on behalf of the therapists. *See Appeal of Franklin Education Assoc.*, 136 N.H. 332, 335, 616 A.2d 919, 921 (1992). We further note that the LEA waited until 1993 to grieve the disparate compensation of the therapists, more than five years after the second therapist was hired. Thus, the history of the bargaining unit coupled with the uncertain scope of the recognition clause indicates that the PELRB's ruling that therapists are members of the bargaining unit is unsupported by the evidence and unreasonable. Accordingly, the school district has satisfied its burden on appeal. *See* RSA 541:13.

In reaching its decision, the PELRB also ruled that because the compensation of the therapist hired in 1980 was similar to that received by members of the bargaining unit, she was a member of the unit, and in any event, the school district was estopped from arguing that she was not a certified teacher and not in the unit. The PELRB determined that the remaining therapists were subsequently included because they performed the same duties as the original therapist. Further, the PELRB noted the inclusion of the therapists with other members of the unit in the present CBA's reduction-in-force provision. None of these findings, however, provide an adequate independent ground to support inclusion in the bargaining unit. *Cf. Appeal of City of Nashua Bd. of Educ.*, 141 N.H. 768, 772, 695 A.2d 647, 650 (1997).

■ Similarity in compensation between employees holding different positions is not dispositive of an employee's inclusion in a bargaining unit. *Cf. Appeal of Bow School District*, 134 N.H. at 69, 588 A.2d at 370 (decisions of PELRB presumed not to rest upon any one factor); *Appeal of the University System of N.H.*, 120 N.H. 853, 855, 424 A.2d 194, 196 (1980) ("not every group of employees who perceive a community of interest will be an appropriate bargaining unit"). Otherwise, an employer could never provide similar compensation for union and non-union positions without fear of enlarging the bargaining unit.

■ The PELRB has the sole authority to certify a modified bargaining unit. *See* RSA 273-A:8. An employer cannot do so by compensating one position at the same rate as a position within a bargaining unit. *Cf. Boise Cascade Corp. v. N.L.R.B.*, 860 F.2d 471, 475 (D.C. Cir. 1988) ("neither an employee nor a union has the unilateral power to modify the scope of a bargaining unit"). Nor may a union do so by prematurely grieving a work condition on behalf of a position not yet added to a bargaining unit. *Cf. id.* The LEA recognized the need to follow the modification procedure when it petitioned the PELRB to modify the bargaining unit to include the school psychologist position.

■ Finally, the PELRB reasoned that inclusion of therapists in the CBA's reduction-in-force provision indicated that therapists are included in the bargaining unit. CBAs, however, may reflect the rights of employees not included in bargaining units. *Cf. N.L.R.B. v. District 23, UMWA*, 921 F.2d 645, 649 (6th Cir. 1990) (discussing seniority rights of bargaining unit and non-bargaining unit employees). Moreover, the mere mention of a position in the text of a CBA does not avoid the need to satisfy the statutory requisites for adding that position to the bargaining unit. *See* RSA 273-A:8; *cf. Appeal of Bow School District*, 134 N.H. at 70, 588 A.2d at 370 (rejecting argument that identical positions bearing the same job title must be in same bargaining unit); *Boise Cascade Corp.*, 860 F.2d at 475 ("parties cannot bargain unless they know which employees a union represents").

We need not address the LEA's other arguments because they are premised upon the inclusion of therapists in the bargaining unit.

*Reversed.*

All concurred.