Public Employee Labor Relations Board
No. 2005-819

APPEAL OF THE TOWN OF HAMPTON
(New Hampshire Public Employee Labor Relations Board)

Argued: June 7, 2006
Opinion Issued: August 23, 2006

*Sheehan Phinney Bass + Green, P.A.*, of Manchester (*Elizabeth A. Bailey* on the brief and orally), for the appellant.

*McKittrick Law Offices*, of North Hampton (*J. Joseph McKittrick* on the brief and orally), for the appellee.

DALIANIS, J. The appellant, Town of Hampton (town), appeals a decision of the New Hampshire Public Employee Labor Relations Board (PELRB), in which the PELRB ordered the town to cease and desist from directly dealing with members of the Hampton Police Association (the union). We reverse.

The record contains the following facts: At the town's 2005 annual meeting, voters rejected a proposed warrant article concerning payment for private police details. As a result, the town notified the union, which acts as the exclusive bargaining representative for all police officers in the Hampton Police Department (HPD), that no private details would be assigned to union members for the remainder of the 2005 fiscal year. The union thereafter demanded impact bargaining, and the parties participated in a bargaining session on May 4, 2005. At the bargaining session, the parties discussed proposals for alternative solutions regarding the issue of private police details, but failed to reach an agreement.

The president of the union, Officer Steven Henderson, was present at the bargaining session. On May 18, 2005, Henderson, using the HPD's official e-mail system, distributed an e-mail addressing an article about the bargaining session which had been published in a local newspaper. The e-mail stated, in relevant part:

> The inaccuracies in the article have been noted. . . . The two dollar quote was an outright lie. A part time officer gets 29 dollars currently, 22 dollars was proposed, [t]he difference is $7 dollars. A sergeant can get up to $40 an hour, proposal $27 [*sic*] the difference would be $13. The real issue is liability insurance, [workers' compensation]. Who takes care of your family or you if you are injured on duty[?] God forbid if someone was killed.

Henderson sent the e-mail to all HPD personnel, union members and non-union members alike.

On May 19, 2005, the town's Chief of Police, William Wrenn, posted a response to Henderson's e-mail on the HPD's official bulletin board. The response, which was addressed to "All Hampton Police Officers," stated, in relevant part:

> I am writing to you to correct the misinformation that you were given by Ptl. Henderson regarding the private detail proposal that would have addressed the private detail problem. A local businessman . . . came up with a plan that would have paid *ALL OFFICERS $27 PER HOUR FOR WORKING DETAILS.* He would have made all the necessary deductions and would pay *ALL THE INSURANCES INCLUDING WORKER'S COMPENSATION AND LIABILITY INSURANCE. . . .* This is the proposal the Town made to your Union's representatives on May 4th. It was rejected by them.

The union filed a complaint with the PELRB on June 1, 2005, alleging that the town, through Wrenn's memorandum, engaged in an unfair labor practice in violation of RSA 273-A:5 (1999). The PELRB conducted an evidentiary hearing, and, on September 8, 2005, issued an order finding that the town had committed an unfair labor practice. Specifically, the PELRB concluded that Wrenn's memorandum contained "promises of benefit," that the memorandum was directed to union members rather than to elected union leadership, and that such "direct dealing" violated RSA 273-A:5, I(e). The PELRB ordered the town to cease and desist from "directly dealing" with the union membership, and further directed that the order be posted on the HPD's official bulletin board. The town filed a motion for reconsideration, which the PELRB denied.

On appeal, the town argues that the PELRB erred in determining that Wrenn's memorandum constituted direct dealing with the union membership in violation of RSA 273-A:5, I(e). "When reviewing a decision of the PELRB, we defer to its findings of fact, and, absent an erroneous ruling of law, we will not set aside its decision unless the appealing party demonstrates by a clear preponderance of the evidence that the order is unjust or unreasonable." *Appeal of Nashua Police Comm'n*, 149 N.H. 688, 689 (2003) (quotation omitted); *see also* RSA 541:13 (1997). Though the PELRB's findings of fact are presumptively lawful and reasonable, we require that the record support its determinations. *Appeal of City of Laconia*, 150 N.H. 91, 93 (2003).

 It is a prohibited practice for a public employer to refuse to negotiate in good faith with the exclusive representative of a bargaining unit. RSA 273-A:5, I(e). Accordingly, a public employer must refrain from negotiating with any union member who is not designated as an exclusive representative. *Appeal of Franklin Education Assoc.*, 136 N.H. 332, 335 (1992). "Dealing directly with employees is generally forbidden because it seriously compromises the negotiating process and frustrates the purpose of [RSA chapter 273-A]." *Id.* (citation omitted.) However, the mere act of communication by an employer with its employees is not a *per se* unfair labor practice under RSA 273-A:5. *Appeal of AFL-CIO Local 298*, 121 N.H. 944, 946 (1981).

Having reviewed the record, we conclude that the PELRB erred in determining that the town dealt directly with union members in violation of RSA 273-A:5, I(e). It is undisputed that Henderson distributed his e-mail to all HPD employees, including non-union members and Wrenn, using the HPD's official e-mail system. Henderson did not indicate that he was sending the e-mail in his capacity as union president, and the e-mail does not purport to communicate to union members information pertaining to ongoing collective bargaining. Rather, Henderson specifically notes in the e-mail that he is addressing alleged inaccuracies in a published newspaper article.

Wrenn, in turn, directed his response at alleged misinformation in Henderson's e-mail. It provides information about a proposal that, among other things, "would have" addressed the private detail problem, "would have" paid officers a certain hourly wage, and "would have" paid for insurance benefits. Wrenn closed his response by noting that the union had rejected the proposal. Nothing in the response indicates that collective bargaining pertaining to private police details was ongoing—in fact, no further sessions were scheduled—and Wrenn, having described the

proposal entirely in the past tense, does not suggest that it would be available for future consideration.

■ An attempt by a public employer to negotiate directly with union members rather than with their exclusive representative constitutes an unfair labor practice, because all such actions thwart the collective bargaining purposes of RSA chapter 273-A. *See Appeal of Franklin Education Assoc.*, 136 N.H. at 336. In *Appeal of Franklin Education Assoc.*, we found that impermissible "direct dealing" had occurred when a public employer unilaterally contacted and applied pressure to union members with regard to contracts that were to be the subject of renegotiation. *Id.* at 336-37. In this case, however, Wrenn composed and posted his letter in response to arguably inflammatory and allegedly inaccurate comments that Henderson had disseminated throughout HPD. Moreover, his letter pertained not to ongoing or future negotiations between the town and the union, but, rather, failed past negotiations. As such, we conclude that the PELRB erred in finding that the town violated RSA 273-A:5, I(e) by engaging in direct dealing with union members.

In finding that the town engaged in direct dealing, the PELRB, citing 29 U.S.C. § 158(c) (2000), concluded that the language in Wrenn's letter pertaining to hourly wages and insurance benefits constituted a "promise of benefit." Section 158(c) "implements the First Amendment by requiring that the expression of 'any views, argument, or opinion' shall not be 'evidence of an unfair labor practice,' so long as such expression contains 'no threat of reprisal or force or promise of benefit' . . . ." *N.L.R.B. v. Gissel Packing Co.*, 395 U.S. 575, 617 (1969) (*quoting* 29 U.S.C. § 158(c)). Because we are reviewing only an alleged unfair labor practice under RSA 273-A:5, and because RSA chapter 273-A contains no clause analogous to 29 U.S.C. § 158(c), we need not consider whether Wrenn's comments constituted a "promise of benefit." Even if RSA chapter 273-A did contain an analogous clause, we would simply restate our conclusion that Wrenn had merely responded to perceived misinformation regarding past negotiations, and, as such, promised no future benefit.

*Reversed.*

BRODERICK, C.J., and DUGGAN, GALWAY and HICKS, JJ., concurred.