NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Public Employee Labor Relations Board
No. 2012-798

APPEAL OF TOWN OF NORTH HAMPTON
(New Hampshire Public Employee Labor Relations Board)

Argued: November 13, 2013
Opinion Issued: May 7, 2014

McKittrick Law Offices, of North Hampton (J. Joseph McKittrick on the brief and orally), for the petitioner.

Molan, Milner & Krupski, PLLC, of Concord (John S. Krupski on the brief and orally), for the respondent.

HICKS, J. The petitioner, the Town of North Hampton (Town), appeals a decision of the New Hampshire Public Employee Labor Relations Board (PELRB), finding that the Town engaged in unfair labor practices in dealing with the respondent, the North Hampton Professional Fire Fighters, Local 3211, IAFF (Union). We affirm.

The following facts were found by the PELRB or are supported in the record. The Town is a public employer. See RSA 273-A:1, X (2010). The Union is certified by the PELRB as the exclusive representative, for purposes of collective bargaining and settling grievances, of a bargaining unit comprised of "[f]ull time firefighters, EMT personnel and lieutenants."

The term "[e]mergency medical technician (EMT)" is defined by administrative regulation to mean "an emergency medical care provider, specifically trained at the EMT-basic, EMT-intermediate or EMT-paramedic level of certification to administer life support care to injured and sick persons in prehospital settings, overseen and directed by physicians." N.H. Admin. Rules, Saf-C 5901.50. EMTs are licensed by the department of safety. See RSA 153-A:11 (Supp. 2013); N.H. Admin. Rules, Saf-C ch. 5903.

The parties' most recent collective bargaining agreement was for the period beginning July 1, 2010, and ending June 30, 2011 (the CBA). After the expiration of the CBA, the parties' relationship was governed by the status quo doctrine. See Appeal of Alton School Dist., 140 N.H. 303, 307 (1995).

The CBA contained wage scales for firefighters and lieutenants, respectively, each consisting of five steps. It provided that "[m]ovement through [the] steps is dependent on achieving certain professional certifications" as set forth therein. The requirements for each step included: a firefighter or company officer level; an EMT level; and, after step 1, a specified number of years. For example, the requirements for a firefighter to reach step five were listed as "Firefighter II and Emergency Medical Technician Intermediate + 15 years."

During bargaining over the CBA, the Union submitted a wage proposal that provided for, among other things, a "[s]tipend for paramedic level EMT [that] will be 5% over actual step (base pay) whether hired as or a current employee has received the certification." The Town rejected the proposal and the parties put the paramedic program issue on hold. The Town remained interested in a paramedic program, however, and the Union informed the Town in June 2011 that it was willing to resume negotiations over the program. The Town responded that a vacancy on the selectboard was delaying the process. Nevertheless, in August 2011, the Town adopted a paramedic program that was not produced through bargaining with the Union. The program established a wage schedule and conditions of employment similar to those previously proposed by the Union and rejected by the Town.

By letter dated September 6, 2011, counsel for the Town contacted the Union's counsel regarding the new paramedic program. The letter stated that the Town had "voted to establish a paramedic program including that position's initial wages (stipend) and working conditions." It further stated that "it is most logical that this new category be included in the current Firefighter's bargaining Unit. As such the Board recognizes the right of the Union to request to bargain over the wages, hours and working conditions of that position." The letter invited the Union to contact the Town if it wished to engage in such bargaining.

2

At that time, pending before the PELRB was an unfair labor practice charge stemming from the Town's alleged unilateral offer of different health insurance options to Union members. On September 13, 2011, the Union moved to amend its unfair labor practice complaint to include a charge based upon the Town's unilateral adoption of "a plan to increase the pay of firefighters for obtaining additional training" – in other words, the paramedic program. The PELRB granted the motion. Following a hearing, the PELRB found, in pertinent part, that "the Town committed an unfair labor practice on account of its unilateral adoption and establishment of a wage schedule and other conditions of employment for a firefighter EMT with a paramedic licensure level."

On appeal, the Town argues that the PELRB erred in: (1) finding that the Town was required to bargain over its paramedic program when the adoption of that program was within the Town's "managerial prerogative"; (2) finding that the Town had previously created a paramedic program; (3) finding that the Town was required to bargain over the wages, hours, and working conditions of a position before the parties agreed to, and the PELRB ordered, the inclusion of that position in a bargaining unit; and (4) finding, on insufficient evidence, that the Town violated its duty to bargain and/or was motivated by anti-union animus.

Our standard of review is governed by RSA 541:13 (2007). See Appeal of Londonderry School Dist., 142 N.H. 677, 680 (1998); RSA 273-A:14 (2010).

> When reviewing a decision of the PELRB, we defer to its findings of fact, and, absent an erroneous ruling of law, we will not set aside its decision unless the appealing party demonstrates by a clear preponderance of the evidence that the order is unjust or unreasonable. Though the PELRB's findings of fact are presumptively lawful and reasonable, we require that the record support its determinations.

Appeal of Town of Hampton, 154 N.H. 132, 134 (2006) (quotation and citations omitted); see RSA 541:13.

The Town's first challenge to the PELRB's decision is based upon the "'managerial policy exception,' which is contained within the statutory definition of 'terms and conditions of employment.'" Appeal of City of Nashua Bd. of Educ., 141 N.H. 768, 773 (1997). That definition is as follows:

> "Terms and conditions of employment" means wages, hours and other conditions of employment other than managerial policy within the exclusive prerogative of the public employer, or confided exclusively to the public employer by statute or regulations

3

adopted pursuant to statute.  The phrase "managerial policy within the exclusive prerogative of the public employer" shall be construed to include but shall not be limited to the functions, programs and methods of the public employer, including the use of technology, the public employer's organizational structure, and the selection, direction and number of its personnel, so as to continue public control of governmental functions.

RSA 273-A:1, XI (2010).  The Town contends that "[t]he creation . . . and the parameters of programs" like the paramedic program are the exclusive province of management.  Reasoning that the "[c]reation of a new program includes its cost which entails an initial determination of hours and wages and work conditions," the Town concludes that it was not "required to bargain with the Union prior to establishing the initial wages, hours, and other conditions of employment."  We disagree.

"[A] public employer's 'greater' power to create or eliminate a position or program does not necessarily include the 'lesser' power to unilaterally determine wages and hours for the position or program."  Appeal of City of Nashua Bd. of Educ., 141 N.H. at 775.  To determine whether the Town had a managerial prerogative to initially set the wages, hours, and other conditions of employment for firefighter/paramedics, we apply "a three-step analysis for measuring a particular proposal or action against the managerial policy exception."  Id. at 773.

First, to be negotiable, the subject matter of the proposed contract provision must not be reserved to the exclusive managerial authority of the public employer by the constitution, or by statute or statutorily adopted regulation.  Second, the proposal must primarily affect the terms and conditions of employment, rather than matters of broad managerial policy.  Third, if the proposal were incorporated into a negotiated agreement, neither the resulting contract provision nor the applicable grievance process may interfere with public control of governmental functions contrary to the provisions of RSA 273-A:1, XI.

A proposal that fails to satisfy the first step is a prohibited subject of bargaining.  A proposal that satisfies step one, but that fails either step two or step three, is a permissible topic of negotiations.  A proposal that satisfies all three steps is a mandatory subject of collective bargaining.

Id. at 773-74 (quotations and citations omitted).

4

With respect to the first step, the Town has failed to identify any "independent statute, or any constitutional provision or valid regulation," id. at 774, that reserves "establishing the initial wages, hours, and other conditions of employment" of firefighter/paramedics to the Town's exclusive managerial authority. As in Appeal of City of Nashua Board of Education, we reject the Town's "bootstrapping attempt" to find such a reservation of authority in RSA 273-A:1, XI itself. Id.

We also conclude, under the second step of the managerial policy exception analysis, that "the proposal . . . primarily affect[s] the terms and conditions of employment, rather than matters of broad managerial policy." Id. at 774. Here, as in many cases, the particular paramedic program "touch[es] on significant interests of both the public employer and the employees." Id. We conclude, however, as did the PELRB, that the matters of wages, hours, and conditions of employment for firefighter/paramedics may be considered separately from other aspects of the program. Cf. City of Elizabeth v. Elizabeth Fire Off., 487 A.2d 337, 340 (N.J. Super. Ct. App. Div. 1985) (finding that issues of establishing a sick leave verification policy – a managerial prerogative – and determining "who pays for the required doctors' reports," were, in context of determining public employer's obligation to negotiate, "for all practical purposes entirely severable"). Thus, the PELRB found that while "it is within the Town's managerial prerogative to determine that it wants to promote the provision of EMT services at the paramedic level[,] . . . the Town is obligated to bargain with the Union [over] the compensation and other conditions of employment for an EMT who holds a paramedic license." This finding comports with our case law:

> [O]ur cases have consistently recognized proposals and actions
> that primarily affect wages and hours as mandatory subjects of
> bargaining. For example, even though a school board's authority
> to decide whether to offer extracurricular programs or to determine
> the number of such programs implicates broad managerial policy,
> the wages and hours for staff involved in any extracurricular
> programs constitute mandatory subjects of bargaining.

Appeal of City of Nashua Bd. of Educ., 141 N.H. at 775 (citations omitted); see Appeal of Berlin Educ. Ass'n, 125 N.H. 779, 783-84 (1984).

Finally, having determined that we may analyze the wages and conditions of employment component of the paramedic program separately, we conclude that if this proposal were incorporated into a negotiated agreement, the resulting contract provision would not interfere with public control of governmental functions. See Appeal of City of Nashua Bd. of Educ., 141 N.H. at 774; cf. NJ Transit Auth. v. Transit PBA, 714 A.2d 329, 333 (N.J. Super. Ct. App. Div. 1998) (noting that while "a public employer has a prerogative to

5

determine training issues[,] . . . it is well-established that employees may negotiate the costs connected with training without significantly impinging on the managerial prerogative"). Because the wages, hours, and employment conditions component of the paramedic program satisfies all three steps of the managerial policy exception analysis, it is a mandatory subject of collective bargaining. See Appeal of City of Nashua Bd. of Educ., 141 N.H. at 774.

The Town next argues that the PELRB erred in finding that the Town had previously created a paramedic program. Specifically, the Town asserts that the PELRB found that, because "the Town had previously employed firefighters who had paramedic certification[,] . . . it[:] [(1)] had already created a Paramedic Program[;] and [(2)] . . . was now obligated to negotiate over a program already in existence." The Union counters that the PELRB made no such finding.

The PELRB found that "[f]irefighters with an EMT-paramedic level of medical licensure/certification have previously worked in the department but without any distinction in pay" and noted that "both the Town and the Union are interested in resuming a paramedic level of service in town on a more permanent basis." The Town asserts that it "has never denied that it had employed firefighters who possessed paramedic certification," but contends that it "never provided paramedic service to its citizens." It acknowledges that there was testimony before the PELRB that an EMT is required by the State to provide a level of service consistent with the level at which he or she is licensed. It then argues that even if this requirement exists, it establishes "only that the individual who possesses paramedic certification must provide 'paramedic care'[,] not that the Town had assumed that responsibility."

While the PELRB's finding with regard to "resuming a paramedic level of service" might be ambiguous, it is immaterial because the PELRB did not find that the Town was obligated to bargain over a paramedic program already in existence. Rather, the PELRB found that the position of "EMT-paramedic is not a new position but is an EMT with the third, or highest, level of training and certification" and that "[a]n EMT in the Town Fire Department is already a bargaining unit position that is represented by the Union." It is this determination that we must review for error.

"The composition of a bargaining unit is limited by law to those positions identified in the recognition clause at the time the original unit is certified by the PELRB and by any subsequent modifications approved by the PELRB." Appeal of Londonderry School Dist., 142 N.H. at 680. "Our focus, therefore, is upon the language of the recognition clause, which we review de novo." Id.

The applicable Certification of Representative and Order to Negotiate issued by the PELRB certifies that the Union was "designated and selected by a

6

majority of the employees of the [Town], in the unit described below, as their representative for the purpose of" collective bargaining and settling grievances:

UNIT:    Full time firefighters, EMT personnel and lieutenants.
         EXCLUDED:  Full time Deputy Chief.

The PELRB concluded that the term "EMT personnel" includes EMT-paramedics, reasoning that the applicable administrative rules designate "three levels of EMT certification[,] . . . EMT-basic, EMT-Intermediate, and EMT-paramedic," and, therefore, the "EMT-paramedic is . . . an EMT with the third, or highest, level of training and certification."

The Town challenges that reasoning, arguing that "[a] paramedic is not simply a more advanced EMT designation; it is a designation within and part of a discrete and specific program."  The Town concludes that "[p]aramedic certification is not an extension or another level of EMT certification: it is a discrete certification."  The Town cites no legal support for these assertions, and we have found none.  Rather, as noted previously, New Hampshire Administrative Rule, Saf-C 5901.50 defines "[e]mergency medical technician (EMT)" to mean, in pertinent part, "an emergency medical care provider, specifically trained at the EMT-basic, EMT-intermediate or EMT-paramedic level of certification."  N.H. Admin. Rules, Saf-C 5901.50 (emphasis added).  Interpreting the language of the bargaining unit certification de novo, Appeal of Londonderry School Dist., 142 N.H. at 680, we conclude that the term "EMT personnel" includes EMT-paramedics.

Our conclusion that EMT-paramedics are already in the bargaining unit disposes of the Town's next issue; namely, that it "has no obligation to bargain over the creation or the initial wages, hours, and working conditions of new positions such as those in the Paramedic Program" until the Town agrees to, and the PELRB orders, inclusion of the new positions in a bargaining unit.  Moreover, we note that the record casts significant doubt upon the Town's appellate attempts to characterize the paramedic-certified firefighter as a new position.  In his letter to Union counsel following adoption of the paramedic program, Town counsel stated that the Town selectboard "made the determination not to create a new position distinct from that of FireFighter, but to create [a] new category of Firefighter identified as a Firefighter/Paramedic."  This is consistent with the CBA pay scales, in which "[m]ovement through [the] steps is dependent on achieving certain professional certifications," including EMT certifications.  Thus, in addition to falling within the EMT classification in the bargaining unit, participants in the paramedic program apparently would fall within the firefighter classification as well.

Finally, the Town argues that "[t]here was NO evidence submitted to the PELRB that the creation of the Paramedic Program was based upon direct

7

dealing or anti-union animus." The PELRB, however, made no finding of direct dealing with respect to the paramedic program, but, rather, found such with respect to the original insurance-related unfair labor practice charge that was pending when the Union added the charge related to the paramedic program. The Town did not appeal the PELRB's ruling with respect to the insurance-related charge.

In any event, a finding of anti-union animus was not necessary to the PELRB's finding that the Town committed an unfair labor practice by unilaterally setting the wage and other conditions of employment for a firefighter/paramedic. "A unilateral change in a condition of employment is equivalent to a refusal to negotiate that term and destroys the level playing field necessary for productive and fair labor negotiations." Appeal of Alton School Dist., 140 N.H. at 308 (emphasis added).

The Town has failed to demonstrate that the PELRB made an erroneous ruling of law or to demonstrate, by a clear preponderance of the evidence, that its order is unjust or unreasonable. Appeal of Town of Hampton, 154 N.H. at 134; see RSA 541:13. Accordingly, we will not set aside the PELRB's decision. Given our rulings above, we need not address the parties' remaining contentions.

Affirmed.

DALIANIS, C.J., and CONBOY, LYNN and BASSETT, JJ., concurred.

8