Public Employee Labor Relations Board
No. 2002-675

## APPEAL OF CITY OF LACONIA
### (New Hampshire Public Employee Labor Relations Board)

Argued: June 18, 2003
Opinion Issued: October 1, 2003

*Devine, Millimet & Branch, P.A.*, of Manchester (*Mark T. Broth* and *Abigail J. Sykas* on the brief, and *Mr. Broth* orally), for the petitioner.

*Cook & Molan, P.A.*, of Concord (*John S. Krupski* on the brief and orally), for the respondent.

DUGGAN, J. The petitioner, City of Laconia (City), appeals a New Hampshire Public Employee Labor Relations Board (PELRB) decision dismissing its petition to modify the fire department's collective bargaining unit to exclude lieutenants and captains. We affirm.

The respondent, Laconia Professional Firefighters, Local 1153, IAFF (Union), has been the exclusive representative of the bargaining unit of firefighters, captains and lieutenants since 1956. In 2000, the City petitioned the PELRB to modify the bargaining unit to exclude lieutenants and captains. The PELRB dismissed the petition and the city appealed to this court. In 2002, we remanded the case to the PELRB to decide: (1) whether lieutenants and captains are supervisors within the meaning of RSA 273-A:8, II (1999); (2) if the lieutenants and captains are supervisors, whether it is permissible to include them in the same bargaining unit as firefighters; and (3) whether the City is barred from challenging the composition of the bargaining unit because of laches or some other reason. *Appeal of City of Laconia*, 147 N.H. 495, 497 (2002).

On remand, the PELRB affirmed the previous dismissal of the City's petition because, "while lieutenants and captains may be 'supervisors' by virtue of their ranks or titles, they are not sufficiently 'supervisors' by function or vested with sufficient 'disciplinary authority' to cause their exclusion from the bargaining unit." Regarding the issue of laches, the PELRB said that it "[did] not address the issues of laches in detail, with the exception of noting that if the City were allowed to proceed, there would be what it called 'resulting prejudice' [] because the remaining lieutenants and captains would be less than ten in number."

On appeal, the City challenges the PELRB's conclusion that lieutenants and captains are not supervisors who must be excluded from the

bargaining unit. The City also challenges the PELRB's dismissal of its modification petition based upon the doctrine of laches. Finally, the City asserts that the Union's argument that it waived its right to petition for a modification is without merit. We agree with the PELRB that the doctrine of laches bars the City's modification petition; thus, we need not address the remaining issues.

"To succeed on appeal, the [City] must show that the [PELRB's] decision is unlawful or clearly unreasonable. We review for errors of law without deference to the [PELRB's] rulings. The [PELRB's] findings of fact are presumptively lawful and reasonable, but we require that the record support the [PELRB's] determinations." *Appeal of Town of Stratham*, 144 N.H. 429, 430 (1999) (citations and quotations omitted).

■ "Laches is an equitable doctrine that bars litigation when a potential plaintiff has slept on his rights." *Town of Seabrook v. Vachon Management*, 144 N.H. 660, 668 (2000) (quotation omitted). The doctrine of laches "is not a mere matter of time, but is principally a question of the inequity of permitting the claim to be enforced." *Id.* at 668 (quotation omitted). We consider four factors in our analysis: (1) "the knowledge of the plaintiffs"; (2) "the conduct of the defendants"; (3) "the interests to be vindicated"; and (4) "the resulting prejudice." *Id.* Our analysis of these factors "hinges upon the particular facts of each case." *Healey v. Town of New Durham*, 140 N.H. 232, 241 (1995).

The PELRB found the following facts. The City and the Union began collective bargaining in 1956. In 1976, the PELRB formally certified the Union as the exclusive representative for the bargaining unit, which consisted of captains, lieutenants and firefighters. Captains and lieutenants had been conducting oral performance evaluations of the firefighters since 1956. In December 1996, the Union and City agreed that the evaluations would be written "with the caveat that it was agreed that it was not to be used to demonstrate management functions on behalf of the lieutenants and captains such as to exclude them from the bargaining unit." The 1998 collective bargaining agreement contained the first contractual reference to written performance evaluations.

■ We now consider the four factors to determine whether the doctrine of laches bars the City's petition. First, we consider the City's knowledge. The City knew in 1975 that the legislature enacted RSA 273-A:8, II, which provides that "[p]ersons exercising supervisory authority involving the significant exercise of discretion may not belong to the same bargaining unit as the employees they supervise." The enactment of RSA 273-A:8, II alone may not have given the City notice to petition the PELRB to exclude

captains and lieutenants from the bargaining unit. However, our subsequent case law explained the scope of the statute.

In 1988, we held that fire department captains with certain authority, "regardless of whether it is presently exercised," are supervisors under RSA 273-A:8, II. *Appeal of University System of N.H.*, 131 N.H. 368, 376 (1988) (hereinafter *Appeal of UNH*). In *Appeal of UNH*, the captains' duties included "assigning work, ensuring that the shifts are fully staffed, and being in command of fire and other incidents when senior staff [were] not present." *Id.* at 376. Also, in *Appeal of UNH*, the PELRB had found that the "captains have some limited supervisory authority over the firefighters, including significant discretion or independent judgment." *Id.* at 376. Given the facts and holding in *Appeal of UNH*, the City should have known by 1988 that a petition for modification would be in order but failed to file one. In fact, in 1998, the City negotiated a new collective bargaining agreement with the Union that included the captains and lieutenants.

The City argues that its delay is insufficient to bar its petition. We agree that delay is only one factor; nevertheless, significant delay must be present to trigger a laches analysis. *Seabrook*, 144 N.H. at 668. As we noted in *Miner v. A & C Tire Co.*, 146 N.H. 631, 634 (2001), laches did not bar suit where the plaintiff's delay did not prejudice the defendants. Thus, once there is a delay, we must consider the remaining factors. *Healey*, 140 N.H. at 241.

■ Second, we consider the conduct of the Union. Richard Molan, the Union's chief negotiator since 1979, testified that the issue of whether captains and lieutenants were considered supervisors within the meaning of RSA 273-A:8, II was never an issue during negotiations until 1996. After an October 1996 meeting, the City and Union came to an "agreement on this contract language with the caveat that it was agreed that it was not to be used to demonstrate management functions on behalf of the lieutenants and captains such as to exclude them from the bargaining unit." Nothing in the record indicates that the Union's conduct contributed to the City's delay. The City did not rely upon the Union's conduct in delaying its petition. Rather, the Union's conduct indicates its intent to limit the supervisory authority of the captains and lieutenants in an effort to preserve the bargaining unit.

■ Third, we consider the interests to be vindicated. In 1975, the legislature enacted RSA chapter 273-A because "it is the policy of the state to foster harmonious and cooperative relations between public employers and their employees and to protect the public by encouraging the orderly and uninterrupted operation of government." Laws 1975, 490:1. Since

1976, the bargaining unit has included captains and lieutenants. This bargaining unit has negotiated successive collective bargaining agreements to the benefit of the entire unit without exception. According to RSA 273-A:8, an appropriate bargaining unit is determined by "the principle of community of interest." Michael Drake, a lieutenant since 1989, confirmed that "the captains, lieutenants and firefighters all have the same working conditions under the contract, with the exception of pay differentials, and have a 'self-felt community of interest.'" Excluding captains and lieutenants from the bargaining unit after twenty-seven years and disrupting this "self-felt community of interest" would be inconsistent with the State's interest in fostering "harmonious and cooperative relations between public employers and their employees." Laws 1975, 490:1.

 Finally, we consider the resulting prejudice. The PELRB found that "if the City were allowed to proceed, there would be ... 'resulting prejudice' ... because the remaining lieutenants and captains would be less than ten in number" and thus ineligible to form a bargaining unit. RSA 273-A:8, I. While the City has offered to negotiate with the captains and lieutenants, the captains and lieutenants would not be eligible to be certified as a bargaining unit and enjoy the resulting protections provided in RSA chapter 273-A.

For instance, the City would not be obligated to meet "at reasonable times and places" or "cooperate in mediation and fact-finding." RSA 273-A:3. Also, a breach of any agreement reached between the City and the captains and lieutenants would not constitute an unfair labor practice. RSA 273-A:5 (1999). The PELRB would not have jurisdiction to issue a cease and desist order to remedy the breach. RSA 273-A:6 (1999). Thus, the City has failed to meet its burden to show that the PELRB's conclusion that there would be a "resulting prejudice" was unlawful or clearly unreasonable.

 Based upon our review of the facts in light of the City's knowledge, the Union's conduct, the interests to be vindicated and the resulting prejudice, we conclude that the PELRB properly dismissed the City's petition for modification based upon the doctrine of laches.

*Affirmed.*

BROCK, C.J., and BRODERICK, NADEAU and DALIANIS, JJ., concurred.