Public Employee Labor Relations Board
No. 2011-281

APPEAL OF HOLLIS EDUCATION ASSOCIATION, NEA-NEW HAMPSHIRE
(New Hampshire Public Employee Labor Relations Board)

Argued: January 18, 2012
Opinion Issued: March 9, 2012

*Jackson Lewis LLP*, of Portsmouth (*Thomas M. Closson* on the brief and orally), for the petitioner.

*James F. Allmendinger*, of Concord, staff attorney, NEA-New Hampshire, by brief and orally, for the respondent.

HICKS, J. The respondent, the Hollis Education Association, NEA-New Hampshire (association), appeals a decision of the public employee labor relations board (PELRB) sustaining an unfair labor practice complaint filed by the petitioner, the Hollis School Board (board), and ruling that the speech-language pathologists and occupational therapists employed by the Hollis School District (district) are not members of the bargaining unit represented by the association. We affirm.

The following facts were found by the PELRB or are supported in the record. In 1976, the association and the district entered into a collective bargaining agreement (CBA) that contained a recognition clause, defining the scope of the bargaining unit as "[c]ertified full-time teachers, librarians and guidance counsellors who actively teach at least 50% of their time in the Hollis School District and are employed by said district, in accordance with Article I, Agreement dated October 1, 1975." That same year, the PELRB certified the association as the bargaining unit's exclusive representative. *See* RSA 273-A:8, I (Supp. 1975) (amended 1983, 2008, 2011).

Pamela Banks and Robin Fitton were hired by the district as speech-language pathologists in 1994 and 2002, respectively. Banks and Fitton are speech-language pathologists licensed through the New Hampshire Office of Licensed Allied Health Professionals (NH Allied Health Professionals) and are certified by the American Speech-Language-Hearing Association. Fitton testified that, when she was hired, she was told that her salary had to conform to the salary schedule in the CBA.

William Olszewski was hired by the district in 2003 as an occupational therapist. He is an occupational therapist licensed through NH Allied

Health Professionals and certified by the National Board for Certification in Occupational Therapy. When Olszewski was hired, the superintendent told him that his position was covered by the CBA. He was also told that he could not negotiate a higher salary because the district had to comply with the salary schedule in the CBA.

Banks, Fitton and Olszewski each signed a "New Hampshire Teacher Contract" every year of their employment through 2009. These contracts were the same as those received by members of the bargaining unit. They were also required to provide written receipts acknowledging that they received copies of every new CBA. In addition, for the years 2005, 2007 and 2009, all three individuals were included in a salary schedule given to the association by the board during collective bargaining negotiations; the schedule listed employees presumed to be in the bargaining unit.

In April 2010, the superintendent notified Fitton that, "due [to] a reduction in force caused by decreasing enrollments and accompanying budgetary reductions," her employment with the district would be terminated effective June 30, 2010. Shortly thereafter, the association filed a grievance with the superintendent claiming that Fitton's termination violated the CBA. The superintendent denied the grievance, ruling that Fitton's termination did not violate the CBA because speech-language pathologists are not members of the CBA as stipulated in the recognition clause.

In July, Banks and Olszewski received employment agreement letters for the 2010-2011 school year that differed from the annual "New Hampshire Teacher Contract." Subsequently, the association, believing that Banks and Olszewski were members of the collective bargaining unit, filed a grievance claiming that speech-language pathologists and occupational therapists are entitled to the same individual contracts as other members of the bargaining unit. It then made a demand for arbitration pursuant to the terms of the CBA.

In August, the board filed an unfair labor practice complaint with the PELRB, claiming that the association could not file a grievance or request arbitration on behalf of speech-language pathologists because they are not members of the applicable bargaining unit. The board alleged that the association's demand for arbitration violated RSA 273-A:5, II(f) and (g) (2010), and sought to have the PELRB order the association to cease and desist its demand. On October 5, the PELRB held a hearing on the board's complaint. At the hearing, the parties agreed that in connection with the board's complaint, the PELRB could address the association's grievance and demand for arbitration on behalf of the speech-language pathologists and the occupational therapists.

Following the hearing, the PELRB ruled that speech-language patholo-gists and occupational therapists are not members of the 1976 bargaining unit certification. While it found that, "for a number of years prior to 2010," the association and the district treated speech-language pathologists and occupational therapists "just like bargaining unit positions, and in particu-lar just like the certified teacher position," it concluded that "[t]he disputed positions are not part of the PELRB bargaining unit certification" because they "are not listed in the [1976] certified bargaining unit" and are not included within the term "certified teacher." As a result, it found that it could not "recognize any right of the Association to proceed to arbitration" on behalf of those positions. The association's motion for rehearing was denied, and this appeal followed.

Our standard of review in this case is governed by RSA 541:13 (2007). *Appeal of Londonderry School Dist.*, 142 N.H. 677, 680 (1998); RSA 273-A:14 (2010). To succeed on appeal, the association must show that the PELRB's decision is unlawful, or clearly unjust or unreasonable. *Appeal of Town of Deerfield*, 162 N.H. 601, 602 (2011); RSA 541:13. The PELRB's findings of fact are presumptively lawful and reasonable and will not be disturbed if they are supported by the record. *Appeal of Town of Deerfield*, 162 N.H. at 602; *see* RSA 541:13.

■ The PELRB has the exclusive authority to certify a bargaining unit. *Appeal of Somersworth School Dist.*, 142 N.H. 837, 840 (1998); RSA 273-A:8, I. However, it must do so according to the dictates of the statute granting that authority. *Appeal of Somersworth School Dist.*, 142 N.H. at 840. RSA 273-A:8, I, provides that "[t]he board . . . shall determine the appropriate bargaining unit and shall certify the exclusive representative thereof when petitioned to do so under RSA 273-A:10." "The composition of a bargaining unit is limited by law to those positions identified in the recognition clause at the time the original unit is certified by the PELRB and by any subsequent modifications approved by the PELRB." *Appeal of Londonderry School Dist.*, 142 N.H. at 680.

Here, although the CBA in effect in 2010 contains a slightly modified version of the recognition clause, no changes to the composition of the bargaining unit have been approved by the PELRB since 1976. *See* RSA 273-A:8, I, :10 (Supp. 2011). Thus, we will examine the relevant language of the 1976 recognition clause to determine whether the bargaining unit certified by the PELRB includes speech-language pathologists and occupa-tional therapists. *See Appeal of Somersworth School Dist.*, 142 N.H. at 840.

Interpretation of the recognition clause is a question of law, which we review *de novo. See Appeal of Londonderry School Dist.*, 142 N.H. at 680. The 1976 recognition clause defines members of the bargaining unit as

"[c]ertified full-time teachers, librarians and guidance counsellors who actively teach at least 50% of their time in the Hollis School District and are employed by said district." The recognition clause does not specifically refer to speech-language pathologists or occupational therapists. Nonetheless, the association argues that the term "certified teacher" is "broad enough to include speech-pathologists and occupational therapists." It maintains that "[s]ince both job titles teach and are certified, they should fall within . . . the recognition clause." We disagree.

■ Since there is no dispute that the employees in this case were "full-time," we will look to the plain meaning of the term "certified teachers." The common meaning of "certified" is "endorsed authoritatively: guaranteed or attested as to quality, qualifications, fitness, or validity." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 367 (unabridged ed. 2002). "Teacher" has the following relevant meaning: "one that teaches or instructs . . . ; *esp*: one whose occupation is to instruct." *Id.* at 2346. Thus, a "certified teacher" refers to an employee whose occupation is to teach and who has the necessary qualifications to do so, *i.e.*, an individual with a certification to teach. By its plain language, the term "certified full-time teachers" does not include speech-language pathologists or occupational therapists.

■ There is no dispute that Banks, Fitton and Olszewski are both licensed and certified in their respective fields, *see* RSA 326-C:5 (2011) (statute governing licensing of occupational therapists); RSA 326-F:3 (2011) (statute governing licensing of speech-language pathologists), and that speech-language pathologists may be certified by the New Hampshire Department of Education, *see* RSA 189:14-e (2008) (statute governing certification of speech-language specialists who "provide speech-language pathology services for schools"); N.H. ADMIN. RULES, Ed 507.23 (Board of Education certification standards for speech-language specialists). Furthermore, there is no dispute that these individuals were treated, and required to perform many of the same duties, as "certified full-time teachers." However, these facts do not render them "certified full-time teachers" under the 1976 recognition clause. *See* N.H. ADMIN. RULES, Ed 507.11 (Board of Education certification standards for elementary education teachers).

■ The association asserts that "[t]he PELRB erred in tying certification and bargaining unit standards to 1976 requirements" because "the teaching profession — and State Board of Education certifications — have changed markedly in the last 45 years." While the teaching profession may have changed since 1976, the PELRB must follow the necessary statutory

procedures for determining the composition of a bargaining unit. As laid out above, pursuant to RSA 273-A:8, I, "[t]he board . . . shall determine the appropriate bargaining unit and shall certify the exclusive representative thereof *when petitioned to do so under RSA 273-A:10.*" (Emphasis added.)

The association further contends that the PELRB should have considered parol evidence, specifically, "the long history of the inclusion of [speech-language pathologist and occupational therapist] employees in the bargaining unit." A review of the PELRB's decision reveals that it, in fact, considered this history but nonetheless was not persuaded that the term "certified full-time teachers" included these employees. As discussed above, we find no error in this decision.

█ Moreover, "[s]imilarity in compensation between employees holding different positions is not dispositive of an employee's inclusion in a bargaining unit. Otherwise, an employer could never provide similar compensation for union and non-union positions without fear of enlarging the bargaining unit." *Appeal of Londonderry School Dist.*, 142 N.H. at 682 (citations omitted). An employer cannot define the scope of the bargaining unit by compensating one position at the same rate as a position within a bargaining unit. *Id.* Likewise, neither an employer nor a union can "avoid the need to satisfy the statutory requisites for adding [a] position to the bargaining unit," *id.*, by simply treating certain positions as though they were included within the bargaining unit. *See* RSA 273-A:8, I.

█ Finally, we reject the association's suggestion that the PELRB should have acted "equitably in reaching a decision" in this case. As we stated in *Appeal of the Somersworth School District*, "[t]he PELRB's broad jurisdiction . . . applies only to those matters specifically encompassed within" RSA chapter 273-A and "the statute does not give it the ability to grant all equitable remedies." *Appeal of Somersworth School Dist.*, 142 N.H. at 841. While the PELRB might have included these positions in the bargaining unit had a petition to modify been filed, the legislature did not give it the authority to modify the bargaining unit in the absence of such a request. *See* RSA 273-A:8, I; *cf. Appeal of Somersworth School Dist.*, 142 N.H. at 841 (finding "that it was error for the PELRB to use an equitable remedy to include [an individual] in a collective bargaining agreement which by its terms did not apply to him").

In light of our ruling, we need not address the association's remaining arguments as they are premised upon inclusion of speech-language pathologists and occupational therapists in the bargaining unit.

*Affirmed.*

DALIANIS, C.J., and CONBOY and LYNN, JJ., concurred.