Carroll
No. 2011-438

PROFESSIONAL FIRE FIGHTERS OF WOLFEBORO, IAFF LOCAL 3708 & a.

v.

TOWN OF WOLFEBORO

Argued: March 8, 2012
Opinion Issued: July 20, 2012

*Molan, Milner & Krupski, PLLC*, of Concord (*John S. Krupski* on the brief and orally), for the petitioners.

*Jackson Lewis LLP*, of Portsmouth (*Daniel P. Schwarz* on the brief and orally), for the respondent.

CONBOY, J. The petitioners appeal the order of the Superior Court (*Houran*, J.) dismissing their suit against the respondent, the Town of Wolfeboro (Town). The petitioners include: Professional Fire Fighters of Wolfeboro, IAFF Local 3708 (Union); James D. Dearborn, president of the Union; Frank Bellefleur; Christopher Stevens; Jonathan Powers; Andre deBeer; Joel Dail; Daryl Morales; Mark Fullerton; and Thomas Trask. We affirm.

The following facts are derived from the record. On March 12, 2002, Town voters "authorize[d] the Board of Selectmen to recognize a collective bargaining unit comprised of the full time Fire Fighter and Officer positions of the Wolfeboro Fire-Rescue Department and make and enter into collective bargaining contracts with said bargaining unit concerning the terms and conditions of employment." At the time, the Union was composed of the nine firefighter and officer positions in the Wolfeboro Fire-Rescue Department. The Union was not then, nor has it ever been, certified by the New Hampshire Public Employee Labor Relations Board (PELRB) as a bargaining unit. *See* RSA 273-A:8 (1999) (amended 2008, 2011). Thereafter, the Union and the Board of Selectmen (the Board) entered into a collective bargaining agreement. The agreement contained a duration clause, which provided that:

> This agreement shall expire on December 31, 2003. In the event that this agreement expires without a successor agreement in place, the Town agrees to observe the "status quo" as defined by the New Hampshire Supreme Court under RSA 273-A; however, nothing in this agreement shall be deemed to confer jurisdiction on the New Hampshire [PELRB].

In 2004, the parties entered into a new collective bargaining agreement. The new agreement specified that it would expire on December 31, 2006, and also contained a status quo provision in the event that it expired without a successor agreement in place. Subsequently, the parties agreed upon a one-year contract extension, which expired December 31, 2007.

They were unable, however, to reach a successor collective bargaining agreement during calendar years 2008 and 2009. As a result, the parties conducted themselves according to the status quo provision of the 2004 agreement.

In July 2010, the parties met and agreed on ground rules governing the conduct of their future negotiations, including that "[a]fter October 1, 2010, either party [could] request mediation of the outstanding issues." Shortly thereafter, however, the negotiations broke down.

At its August 2010 meeting, the Board voted on a motion to rescind recognition of the Union. The motion stated:

> [B]ased on the Board's findings that the warrant article passed in 2002 to recognize [the] union . . . was based on a law that had been superseded, that the warrant article authorized but did not require the [Board] to recognize the union . . . the Board . . . hereby rescinds recognition of that union, directs the Town Manager to discontinue negotiating with the union, and considers the collective bargaining agreement negotiated pursuant to the 2002 warrant article to be null and void.

The motion passed unanimously. In September 2010, the Board adopted a new firefighter compensation plan.

The petitioners filed a verified petition for an *ex parte* temporary restraining order against the Town and requested temporary and permanent injunctive relief. After a hearing, the trial court granted the petitioners' requested temporary restraining order, and scheduled the matter for further hearing. The Town moved to dismiss the entire proceeding. Following a hearing, the trial court granted the Town's motion and vacated its temporary restraining order. The court reasoned that "[w]hen the . . . Board . . . undertook to contract with the Fire Fighters through their bargaining unit, Local 3708, they were not authorized by law to do so" because "RSA 273-A:8 reserved the ability to recognize a collective bargaining unit to the PELRB and then only for bargaining units with at least ten members." Since the Board lacked authority to contract with the Union, the court concluded that the contract was *ultra vires* and void. The petitioners unsuccessfully moved for reconsideration. This appeal followed.

In reviewing the trial court's dismissal order, we assume the truth of the facts as alleged in the petitioners' pleadings and construe all reasonable inferences in the light most favorable to the petitioners. *Beane v. Dana S. Beane & Co.*, 160 N.H. 708, 711 (2010). We will uphold the granting of the motion if the facts pleaded do not constitute a basis for legal relief. *Id.*

Resolution of the issue before us requires that we examine the language of the relevant statutes. In matters of statutory interpretation, we are the

final arbiters of the intent of the legislature as expressed in the words of the statute considered as a whole. *State v. Rix*, 150 N.H. 131, 132 (2003). We review the trial court's statutory interpretation *de novo*. *Fog Motorsports #3 v. Arctic Cat Sales*, 159 N.H. 266, 267 (2009). When examining the language of the statute, we ascribe the plain and ordinary meaning to the words used. *Id.* at 268. We do not consider words and phrases in isolation, but rather within the context of the statute as a whole. *Grand China v. United Nat'l Ins. Co.*, 156 N.H. 429, 431 (2007).

Here, the issue turns on the application of two statutes. The first, RSA 31:3 (2000), provides that "Towns . . . may recognize unions of employees and make and enter into collective bargaining contracts with such unions." The other statute, RSA 273-A:8, I, as it existed in 2002, provided in pertinent part, "The [PELRB] or its designee shall determine the appropriate bargaining unit and shall certify the exclusive representative thereof when petitioned to do so under RSA 273-A:10. . . . In no case shall the [PELRB] certify a bargaining unit of less than 10 employees with the same community of interest."

The petitioners argue that these two statutes are "independent avenues to collective bargaining," and, therefore, can be construed so as not to contradict one another. The petitioners contend that "RSA 31:3 allows the legislative body . . . to authorize the Board . . . to negotiate, execute and administer collective bargaining agreements," while "RSA 273-A:8 . . . authorizes employee organizations to require towns to involuntarily submit to the statutory and regulatory framework of the Public Employee Labor Relations law." In response, the Town argues that although RSA 31:3 broadly authorizes towns to recognize unions and enter into collective bargaining agreements with them, it "does not authorize the Town to enter into a collective bargaining agreement that is prohibited by RSA 273-A." It contends that because the Union did not satisfy the requirements of RSA 273-A:8, the 2002 collective bargaining agreement, upon which the renewal and extension agreements were based, was *ultra vires*, and, therefore, void *ab initio*. We agree with the Town.

RSA 31:3, by its clear and unambiguous language, grants municipalities the right to recognize unions and enter into collective bargaining agreements with them. Under this statute, the municipality's exercise of its authority is discretionary. *See* RSA 31:3 ("Towns . . . *may* recognize unions of employees and make and enter into collective bargaining contracts with such unions." (emphasis added)); *Tremblay v. Berlin Police Union*, 108 N.H. 416, 419-20 (1968) ("The power of municipalities to recognize unions of their employees is discretionary and not compulsory . . . .").

In 1975, the legislature enacted RSA chapter 273-A, the Public Employees Labor Relations Act (PELRA), a comprehensive scheme designed "to

foster harmonious and cooperative relations between public employers and their employees and to protect the public by encouraging the orderly and uninterrupted operation of government." Laws 1975, ch. 490:1. The PELRA grants the PELRB exclusive authority to certify bargaining units. *Appeal of Hollis Educ. Assoc.*, 163 N.H. 337, 340 (2012). The first statute grants municipalities discretionary authority to recognize unions and enter into collective bargaining agreements with them, *see Tremblay*, 108 N.H. at 419-20, while the second mandates that public employers negotiate in good faith with employee organizations, *see Appeal of House Legislative Facilities Subcom.*, 141 N.H. 443, 446 (1996) — that is, with certified employee organizations of ten employees or more, *see* RSA 273-A:8, I.

We generally assume that when the legislature enacts a provision, it has in mind previously enacted statutes relating to the same subject matter. *State Employees Assoc. of N.H. v. N.H. Div. of Personnel*, 158 N.H. 338, 345 (2009). Thus, when interpreting two statutes that deal with a similar subject matter, we construe them so that they do not contradict each other and so that they will lead to reasonable results and effectuate the legislative purpose of the statutes. *Grand China*, 156 N.H. at 431. When a conflict exists between two statutes, however, the later statute will control, particularly when the later statute deals with a subject in a specific way and the earlier enactment treats that subject in a general fashion. *Board of Selectmen v. Planning Bd.*, 118 N.H. 150, 152 (1978); 2B N. SINGER & J.D. SINGER, STATUTES AND STATUTORY CONSTRUCTION § 51:5, at 282-83 (7th ed. 2008).

Moreover, although construction of a later statute as impliedly repealing an earlier one is disfavored, *Board of Selectmen*, 118 N.H. at 152, this general principle is subject to two well-recognized exceptions: (1) when it is clear that the later act conflicts with the earlier act; or (2) when the later act clearly is intended to occupy the entire field covered by the prior enactment. 1A SINGER, *supra* § 23.9, at 453-54 (2009); *see Professional Engineers in California Government v. Kempton*, 155 P.3d 226, 240 (Cal. 2007); *Thomas v. State*, 79 S.W.3d 347, 351 (Ark. 2002). Even if we were to agree with the petitioners that RSA 31:3 and the PELRA could theoretically be read harmoniously so as to avoid the first exception, it is clear that the second exception would apply because the PELRA plainly evinces a legislative intent to occupy the entire field of public employee labor relations.

As noted previously, the PELRA is a comprehensive statute that is designed to encompass all aspects of collective bargaining between public employees and their employers in the State of New Hampshire. Given the broad scope of this statute and the exclusive authority it confers on the PELRB to recognize bargaining units, the petitioners offer no plausible

explanation as to why, if the legislature intended to allow municipalities to choose to retain authority to enter into collective bargaining agreements. with unions comprised of less than ten members, it would not have authorized the PELRB to certify such unions with employer consent. Indeed, this is exactly the procedure the legislature followed with its short-lived amendment to the PELRA in 2008, which allowed for the certification of unions comprised of 3-10 members with the approval of the governing body of the public employer. *See* Laws 2008, 137:1 (effective Aug. 5, 2008), *repealed by* Laws 2011, 45:1 (effective July 8, 2011).

Furthermore, when it first enacted the PELRA, the legislature was cognizant of the fact that it was legislating against a background that included collective bargaining agreements that were already in existence. It addressed such pre-existing agreements by specifically providing that, "Nothing in this chapter [the PELRA] shall terminate or modify *prior to August 23, 1978* a bargaining unit, certification of an exclusive representative, or collective bargaining agreement in existence on the effective date of this chapter." Laws 1975, 490:3, as amended by Laws 1977, 437:4 (effective Sept. 3, 1977) (emphasis added); *see also* N.H.S. Journal 1069-70 (1973) (Committee of Conference Report on HB 516) (remarks of Sen. Brown: "[B]argaining units which exist and existing contracts as of the effective date of this law will not be nullified by this bill."). The clear import of this language is that *after* August 23, 1978, collective bargaining agreements are valid only if entered into pursuant to the PELRA. Here, recognition of the union by the Town did not occur until 2002 — long after the hold-harmless provision expired.

For these reasons, we hold that the portion of RSA 31:3 which grants municipalities the right to recognize unions and enter into collective bargaining agreements was superseded by the enactment of the PELRA, and, therefore, that the Town had no authority to recognize the non-PELRB-certified Union. Accordingly, the agreement, as well as the subsequent agreements, are *ultra vires* contracts and wholly void. *Marrone v. Town of Hampton*, 123 N.H. 729, 735 (1983) ("Where a municipal governing body enters into a contract which is beyond the scope of the municipality's powers, such an attempt to contract is termed *ultra vires*, and the contract is wholly void.").

The petitioners also argue that the trial court erred when it rejected their laches and equitable estoppel arguments by concluding that the evidence fell "short of showing that the Board . . . or its counsel knew that it was unable to legally certify the petitioners." The petitioners contend that because the Board had constructive, as well as actual, knowledge of the effect of RSA chapter 273-A, the trial court should not have truncated its

analysis after finding the Board lacked actual knowledge. Accordingly, the petitioners urge us to remand their equitable arguments for consideration by the trial court. We address each argument in turn.

The petitioners first argue that the doctrine of laches should bar the Board's claim. Laches is an equitable doctrine, the application of which is a question of fact for the trial court. *Healey v. Town of New Durham*, 140 N.H. 232, 241 (1995). Therefore, we will not overturn the trial court's decision unless we find it is unsupported by the evidence or erroneous as a matter of law. *Id.* The doctrine of laches is not a mere matter of the elapse of time, but is principally a question of the inequity of permitting the claim to be enforced. *Appeal of City of Laconia*, 150 N.H. 91, 93 (2003). Because it is an equitable doctrine, laches will constitute a bar to suit only if the delay was unreasonable and prejudicial. *Healey*, 140 N.H. at 241. In determining whether the doctrine should apply to bar a suit, a court should consider "the knowledge of the plaintiffs, the conduct of the defendants, the interests to be vindicated, and the resulting prejudice." *N.H. Donuts, Inc. v. Skipitaris*, 129 N.H. 774, 785 (1987). The party asserting laches bears the burden of proving both that the delay was unreasonable and that prejudice resulted from the delay. *State v. Weeks*, 134 N.H. 237, 240 (1991).

Here, the petitioners' pleadings, viewed in the light most favorable to them, fail to demonstrate sufficiently that the Board knew that it was unable to legally certify the Union. Although the Board acknowledged that "it was aware of the statutes from the beginning," the trial court correctly noted that "knowledge of enactment of a statute alone may not give the municipality notice of the issue for purposes of laches." *See Appeal of Laconia*, 150 N.H. at 93-94. Unlike *Appeal of Laconia*, in which case law explained the scope of RSA 273-A:8, II (1999), *see id.* at 94, here, there was no such authority explaining the interplay between RSA 31:3 and RSA 273-A:8. Based on our review of the record, therefore, we find no error in the trial court's factual conclusion that until the summer of 2010, when the Board received advice on the issue from Town counsel, the Board lacked sufficient knowledge of the ramifications of RSA chapter 273-A to warrant the application of the doctrine of laches. Thus, the trial court sustainably exercised its discretion when it rejected the petitioners' laches argument.

Similarly, we find no error in the trial court's rejection of the petitioners' attempt to invoke the doctrine of equitable estoppel. A party claiming estoppel must prove four elements:

first, a representation or concealment of material facts made with knowledge of those facts; second, the party to whom the representation was made must have been ignorant of the truth of the matter; third, the representation must have been made with the

intention of inducing the other party to rely upon it; and fourth, the other party must have been induced to rely upon the representation to his or her injury.

*Healey,* 140 N.H. at 239-240 (quotation omitted). The petitioners bear the burden of proving the elements of their estoppel claim. *Id.* at 240. We will uphold the trial court's denial of that claim unless it is unsupported by the evidence or erroneous as a matter of law. *Id.* Upon a review of the record, we conclude that the petitioners failed to allege facts that would indicate that the Board misrepresented its ability to certify them as a bargaining unit or concealed its inability to do so. Accordingly, we will not disturb the trial court's ruling.

Finally, the petitioners assert that the trial court erred when it refused to reform the agreement into individual contracts. The interpretation of a collective bargaining agreement, including whether a provision or clause is ambiguous, is ultimately a question of law for this court to decide. *Appeal of N.H. Div. of State Police,* 160 N.H. 588, 591 (2010). Our review is *de novo. Id.*

■ Section 16 of the agreement, titled, "Savings Clause," provides:

In the event that *any Article, Section, or portion* of this Agreement is found to violate State law or is found to be unlawful and unenforceable by any court of competent jurisdiction, then such specific Article, Section, or portion shall be amended to the extent necessary to conform with such law, rule or regulation; however, the remainder of this Agreement shall continue in full force and effect.

This clause unambiguously limits amendment to "any Article, Section or portion" that is unlawful and unenforceable. As the trial court noted, however, here, "[t]he legal infirmity does not go to any 'Article, Section, or portion' of the agreement but to the ability of a party to enter into the agreement at all, and there is no 'specific Article, Section, or portion' of the agreement which could be amended to correct the legal infirmity." Thus, we reject the petitioners' contention.

*Affirmed.*

DALIANIS, C.J., and HICKS and LYNN, JJ., concurred.