NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Public Employee Labor Relations Board
No. 2013-253

APPEAL OF TOWN OF BROOKLINE
(New Hampshire Public Employee Labor Relations Board)

Submitted: January 22, 2014
Opinion Issued: April 18, 2014

Law Offices of Shawn J. Sullivan, PLLC, of Concord (Shawn J. Sullivan on the brief), for the petitioner.

Devine, Millimet & Branch, P.A., of Manchester (Donald L. Smith and Anna B. Peterson on the brief), for the respondent.

James F. Allmendinger, of Concord, by brief, for NEA–New Hampshire, as amicus curiae.

LYNN, J. The respondent, the Town of Brookline (the Town), appeals the decision of the New Hampshire Public Employee Labor Relations Board (PELRB), based upon stipulated facts and exhibits, which found that the Town engaged in an unfair labor practice by refusing to bargain with the petitioner, AFSCME, Council 93 (Union). On appeal, the Town argues that the PELRB erred by ruling that the Town had a duty to bargain with the Union even

though the bargaining unit in question, originally certified in 2001, currently contains fewer than ten employees. We affirm.

The following facts either were found by the PELRB or are facts to which the parties stipulated. In October 2001, the PELRB originally approved the bargaining unit and certified the Brookline Police Officers Association (Association) as the bargaining unit's exclusive representative. At the time, the unit contained at least ten employees. As originally certified, the bargaining unit consisted of the patrol officers and a sergeant.

Shortly after the bargaining unit was approved, the Town filed a petition to modify the bargaining unit to exclude the sergeant position. As a result, in April 2002, the PELRB amended the certification between the Association and the Town to exclude the sergeant position from the bargaining unit. Thereafter, the Association and the Town agreed to modify the bargaining unit to include the position of corporal, and, in April 2004, the PELRB amended the bargaining unit description accordingly. In February 2005, the Association filed a petition to change its union affiliation. The Town objected to the petition, in part, because, as of February 2005, "there [were] no more than eight positions in the bargaining unit, consisting of four full-time police officers, three part-time police officers, and one corporal." In April 2005, the Town withdrew its opposition to the Association's petition to change its affiliation. The PELRB granted the petition for changed affiliation on April 22, 2005, and on that date issued an amended certification of representative.

The number of employees holding bargaining unit positions since 2001 has fluctuated. It is undisputed that when the bargaining unit was certified, it contained at least ten employees. The PERLB found that when the instant proceeding was heard, there were fewer than ten bargaining unit employees.

The most recent collective bargaining agreement between the parties expired on December 31, 2011. Before December 31, 2011, the parties began negotiations for a successor agreement. In July 2012, the Town informed the Union that it would no longer participate in the collective bargaining process because the bargaining unit had fewer than ten employees and, therefore, "the [petitioner] no longer [met] the minimum qualifications for certification under RSA 273-A." Thereafter, the Union filed an unfair labor practice charge against the Town. The Town denied the charge, contending that the PELRB lacked jurisdiction over the unfair labor practice charge because the Union represented a bargaining unit of fewer than ten employees. The PELRB found that the fact that the bargaining unit contained fewer than ten employees did not divest it of jurisdiction to consider the unfair labor practice charge. It also found that the Town committed an unfair labor practice by refusing to bargain with the petitioner. This appeal followed.

Our standard of review is set forth by statute.  See RSA 273-A:14 (2010) (appeals from decisions of the PELRB are governed by RSA chapter 541); RSA 541:13 (2007).  Under RSA 541:13, the party challenging the PELRB's decision has the burden "to show that the same is clearly unreasonable or unlawful."  Moreover, all of the PELRB's findings "upon all questions of fact properly before it shall be deemed to be prima facie lawful and reasonable."  RSA 541:13.  We will not set aside or vacate the PELRB's decision "except for errors of law, unless the court is satisfied, by a clear preponderance of the evidence before it, that such order is unjust or unreasonable."  Id.

Resolving the issues in this appeal requires statutory interpretation, which is a question of law that we review de novo.  State Employees' Assoc. of N.H. v. State of N.H., 161 N.H. 730, 738 (2011).  In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole.  Id.  We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning.  Id.  We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include.  Id.  We construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result.  Id.  Moreover, we do not consider words and phrases in isolation, but rather within the context of the statute as a whole.  Id.  This enables us to better discern the legislature's intent and to interpret statutory language in light of the policy or purpose sought to be advanced by the statutory scheme.  Id. at 738-39.

The Town argues that the PELRB lacked subject matter jurisdiction when it recertified the bargaining unit in 2002, 2004, and 2005 because the bargaining unit had fewer than ten members at these times.  In the Town's view, the ten-employee minimum set forth in RSA 273-A:8, I (Supp. 2013) is "jurisdictional," such that public employers with certified units that fall below the statutory minimum ten (10) employees are no longer subject to the Public Employee Labor Relations Act (PELRA).  According to the Town, the ten-employee minimum is a continuous requirement, and once a bargaining unit contains fewer than ten employees, it loses all of the protections of the PELRA.  When that occurs, the Town asserts that, in effect, the unit is deemed to have dissolved.

The petitioner responds that the PELRB properly determined that it had subject matter jurisdiction based upon its ruling in State Employees Association of New Hampshire, Local 1984, on behalf of Ashland Town Employees v. Town of Ashland, PELRB Decision No. 1999-120 (Nov. 23, 1999).  In that case, the PELRB construed RSA 273-A:8, I, to require that there be a minimum of ten members at the time of the initial certification of the bargaining unit, but determined that reductions in the size of the bargaining

unit below ten thereafter do not affect the unit's validity or the PELRB's jurisdiction over it.

We disagree with both parties' positions. With regard to the Town's argument, we note that both the United States Supreme Court and this court have observed that the term "jurisdiction" has often been used in an imprecise and indiscriminate manner. See Steel Co. v. Citizens for Better Environment, 523 U.S. 83, 91 (1998) (admonishing lower federal courts to avoid "drive-by jurisdictional rulings"); Union Pacific R.R. Co. v. Locomotive Engineers, 558 U.S. 67, 81 (2009) ("Recognizing that the word 'jurisdiction' has been used by courts, including this Court, to convey many, too many, meanings, we have cautioned, in recent decisions, against profligate use of the term.") (quotation and citation omitted); Ruel v. N.H. Real Estate Appraiser Bd., 163 N.H. 34, 42 n.2 (2011) (noting that characterization of mandatory time limits as "jurisdictional" "may often be more misleading than illuminating"). In In the Matter of Gray and Gray, 160 N.H. 62, 65 (2010), we explained:

> Subject matter jurisdiction is jurisdiction over the nature of the case and the type of relief sought; the extent to which a court can rule on the conduct of persons or the status of things. In other words, it is a tribunal's authority to adjudicate the type of controversy involved in the action. A court lacks power to hear or determine a case concerning subject matters over which it has no jurisdiction. A party may challenge subject matter jurisdiction at any time during the proceeding, including on appeal, and may not waive subject matter jurisdiction.

(quotations and citations omitted). Applying this principle, we conclude that, at all pertinent times, the PELRB had jurisdiction over the petitioner, as well as jurisdiction to adjudicate the unfair labor practice complaint at issue in this appeal.

RSA 273-A:8, I, provides:

> The board . . . shall determine the appropriate bargaining unit and shall certify the exclusive representative thereof when petitioned to do so under RSA 273-A:10. In making its determination the board should take into consideration the principle of community of interest. The community of interest may be exhibited by one or more of the following criteria, although it is not limited to such:
>
> (a) Employees with the same conditions of employment;

4

(b) Employees with a history of workable and acceptable collective negotiations;

(c) Employees in the same historic craft or profession;

(d) Employees functioning within the same organizational unit.

[In] no case shall the board certify a bargaining unit of fewer than 10 employees with the same community of interest. For purposes of this section, probationary employees shall be counted to satisfy the employee minimum number requirement. In no case shall such probationary employees vote in any election conducted under the provisions of this chapter to certify an employee organization as the exclusive representative of a bargaining unit.

Pursuant to the plain meaning of the statute, it is the PELRB's responsibility to determine whether a bargaining unit consists of at least ten employees with the requisite "community of interest." Nothing in the structure or text of the statute casts this responsibility in jurisdictional terms, or suggests that if the PELRB makes an error in its determinations as to the size of a putative bargaining unit it thereby loses its power to "adjudicate the type of controversy" for which it was created — namely, to certify bargaining units and regulate the relationship between public employers and public employee unions. To construe this or other provisions of the PELRA as jurisdictional would completely undercut the PELRB's authority to carry out the important duties assigned to it by the legislature, since, as demonstrated by the instant case, it would permit public employers (or public employee unions) to ignore the agency's authority and resort to "self-help" actions whenever they believed the PELRB had made an erroneous decision. Rather than affecting the PELRB's subject matter jurisdiction, the ten-employee minimum requirement, like the "community of interest" requirement, is merely one of many mandatory substantive provisions of law encompassed within RSA chapter 273-A that the PELRB must follow in carrying out its responsibilities.

The Town attempts to find support for its construction of RSA 273-A:8, I, in Professional Fire Fighters of Wolfeboro v. Town of Wolfeboro, 164 N.H. 18 (2012). The Town argues that in Professional Fire Fighters of Wolfeboro, we "held that bargaining between a public employer and a bargaining unit consisting of fewer than ten (10) employees was ultra vires and that the agreements negotiated between the employer and the uncertified bargaining unit were null and void." This was not our holding.

Professional Fire Fighters of Wolfeboro concerned the interplay between RSA 31:3 (2000) and the PELRA. Id. at 21. We concluded that the PELRA

superseded RSA 31:3.  Id. at 23.  Thus, although RSA 31:3 grants municipalities the right to recognize unions and enter into collective bargaining agreements, the PELRA provides that the only union that a municipality may recognize, and with which it may bargain collectively, is a union that has been certified by the PELRB.  Id.; see RSA 273-A:8, I.  We explained:

> Given the broad scope of [the PELRA] and the exclusive authority it confers on the PELRB to recognize bargaining units, the petitioners offer no plausible explanation as to why, if the legislature intended to allow municipalities to choose to retain authority to enter into collective bargaining agreements with unions comprised of less than ten members, it would not have authorized the PELRB to certify such unions with employer consent.  Indeed, this is exactly the procedure the legislature followed with its short-lived amendment to the PELRA in 2008, which allowed for the certification of [bargaining units] comprised of 3-10 members with the approval of the governing body of the public employer.  See Laws 2008, 137:1 (effective Aug. 5, 2008), repealed by Laws 2011, 45:1 (effective July 8, 2011).

Prof. Fire Fighters of Wolfeboro, 164 N.H. at 22-23.  Accordingly, because the union in that case had never been certified by the PELRB as the exclusive representative of the bargaining unit at issue, the selectboard had no authority either to recognize the union or to bargain collectively with it.  See id. at 19, 23.  We held, therefore, that all of the collective bargaining agreements between the selectboard and the union were "ultra vires contracts and wholly void."  Id. at 23 (citation omitted).  Contrary to the Town's assertions, the collective bargaining agreements in Professional Fire Fighters of Wolfeboro were void not because the bargaining unit contained fewer than ten employees, but rather because the union had never been certified by the PELRB and the bargaining unit had never been approved by the PELRB.  Id.

At the same time, we find unpersuasive the petitioner's argument that the ten-employee minimum requirement applies only with respect to the initial certification of a bargaining unit.  Neither the word "initial" nor any similar term appears within the text of RSA 273-A:8, I, and we are not at liberty to add such term.  State Employees' Assoc. of N.H., 161 N.H. at 738.  Although this statute does not specifically address how decertification may be accomplished once a bargaining unit has been certified, the PELRB has adopted regulations that do address this matter.  New Hampshire Administrative Rules, Pub 302.05(a) provides:

> Where the circumstances surrounding the formation of an existing bargaining unit are alleged to have changed, or where a prior unit recognized under the provisions of RSA 273-A:1 is alleged to be incorrect to the degree of warranting modification in the

6

composition of the bargaining unit, the public employer, or the exclusive representative . . . may file a petition for modification of bargaining unit.

Given that "to modify" means "to make a basic or important change," Webster's Third New International Dictionary 1452 (unabridged ed. 2002), we construe this regulation as encompassing the circumstance in which the bargaining unit no longer qualifies for certification because the number of employees has fallen below the statutory minimum required for certification.

We note that in Ashland, as in this case, the town acted unilaterally in refusing to negotiate with a union representing a bargaining unit of less than ten employees. Ashland, PELRB Decision No. 1999-120. The town did not seek decertification of the bargaining unit, and the PELRB did not address whether unit membership of less than ten would warrant decertification, if requested. In view of the entire statutory scheme and the PELRB regulations, we conclude that the PELRB has the authority to decide whether a bargaining unit should be decertified because it no longer is comprised of at least ten employees. We add, however, that we agree with the petitioner and the amicus that fluctuations in the size of a bargaining unit that result in temporary membership below ten employees do not necessarily warrant decertification. Applying the ten-employee requirement rigidly in such circumstances would make the obligation to bargain an "on-again off-again" proposition that would surely frustrate the PELRA's goal of harmonious labor relations. Absent legislative action resolving this question, we leave to the PELRB's expertise and discretion the evaluation of whether reduction in membership below ten in any particular case is sufficiently enduring to warrant bargaining unit decertification.

Thus, although the Town argues that the PELRB lacked subject matter jurisdiction when it "recertified" the bargaining unit in 2002, 2004, and 2005, because the ten-employee requirement is not a jurisdictional requirement, the PELRB was not without jurisdiction to decide the unfair labor practice complaint at issue. Moreover, if an employer desires to decertify a bargaining unit because it has fallen below the ten-employee minimum, it must file a petition to decertify with the PELRB. See N.H. Admin. Rules, Pub 302.05(a). Alternatively, the employer can raise the failure to comply with the ten-employee requirement in an objection to a union-initiated petition to modify the composition of the bargaining unit. Here, rather than take either action, the Town unilaterally refused to bargain with the bargaining unit's exclusive representative. The statutory and regulatory scheme does not allow the Town to follow this course.

For all of the above reasons, therefore, we hold that the PELRB did not err either when it concluded that it had jurisdiction to decide the instant unfair

labor practice charge or when it determined that the Town engaged in an unfair labor practice by unilaterally refusing to bargain with the bargaining unit's designated exclusive representative.

<u>Affirmed</u>.

DALIANIS, C.J., and HICKS, CONBOY and BASSETT, JJ., concurred.