HANTZ MARCONI, J., concurring in part and dissenting in part.
I concur in Section IIB of the majority's opinion regarding the correct interpretation of RSA 273-A:11, II (2010). I disagree, however, with the majority's conclusion in Section IIA that "the PELRB erred as a matter of law" when it conducted the inquiry set forth in Appeal of Berlin Education Association, 125 N.H. 779, 485 A.2d 1038 (1984), and determined that the tutoring services at issue do not fall within the scope of an adjunct professor's duties. In reaching this conclusion, the majority fails to adhere to the standard of review established by RSA 541:13 (2007). Because this standard of review dictates that we affirm the PELRB's determination on this issue, I respectfully dissent.
The PELRB concluded, and the parties agree, that Berlin is controlling precedent with respect to the first issue, which is whether CCSNH is obligated to bargain over compensation for tutoring services performed by members of the adjunct faculty bargaining unit. As the majority's opinion correctly notes, in Berlin, "we were called upon to determine whether a school board was obligated to negotiate with teachers over a salary scale for performance of extracurricular duties." See Berlin, 125 N.H. at 780, 485 A.2d 1038. In that case, the union that represented "all permanent full-time teachers employed by the Berlin public schools" sought to negotiate a salary scale for bargaining unit members who performed "extracurricular duties such as coaching and supervising student activities." Id. at 780-81, 485 A.2d 1038. When the school board refused, the union "filed an unfair labor practice charge with the PERLB," which ruled in favor of the school board. Id. at 780, 485 A.2d 1038.
On appeal, we first considered whether the extracurricular duties at issue in Berlin were "within the scope of a teacher's *197 duties." Id. at 782, 485 A.2d 1038. We defined activities constituting "an integral part of" an employee's duties as falling "within the scope of" those duties. Id. at 781-82, 485 A.2d 1038 (quotation omitted). We then concluded that the extracurricular duties at issue were an integral part of a teacher's duties. Id. We reasoned:
There is general agreement that extracurricular activities are a fundamental part of a child's education, making the supervision of such activities an integral part of a teacher's duty toward his or her students.
Teaching is not limited to classroom instruction, but also involves the complete training of a child for citizenship and leadership. Extracurricular activities can be a significant part of that training. To hold[, as the school board suggests,] that extracurricular activities are dissimilar, distinct and outside the community of interest of teachers would be to limit a teacher's role in a child's education merely to classroom instruction. Consequently, we conclude that extracurricular activities are within the scope of a teacher's duties.
Id. (quotation and citations omitted). Based upon that conclusion, we held that compensation for teachers who performed these extracurricular duties constituted "wages" under RSA chapter 273-A and, therefore, this compensation was "a mandatory subject of bargaining." Id. at 783-84, 485 A.2d 1038 (quotation omitted); see id. at 782, 485 A.2d 1038 (noting that RSA chapter 273-A requires public employer and union to negotiate in good faith over "terms of employment" and defines "terms and conditions of employment" to include "wages" (quotation omitted) ).
The majority attempts to diminish Berlin's holding by characterizing Berlin as a case about whether "a salary scale" constitutes "wages," and by citing Berlin as support for the proposition that "[w]ages paid to members of a bargaining unit ... constitute a mandatory subject of negotiations between public employers and employee organizations." (Quotation omitted.) However, the dispute between the parties in Berlin was not whether "a salary scale" fell within the statutory definition of "wages," but, rather, whether a salary scale for performance of extracurricular duties constituted "a mandatory subject of bargaining under RSA chapter 273-A." Id. at 781-82, 485 A.2d 1038 (quotation omitted). The language of Berlin's holding makes clear that, to fall within the definition of "wages" under the Public Employee Labor Relations Act, see RSA ch. 273-A (2010 & Supp. 2017), the compensation must be for activities that are within the scope of the bargaining unit member employee's duties. See Berlin, 125 N.H. at 782-84, 485 A.2d 1038. Specifically, we held that "compensation for extracurricular activities, which is remuneration for services constituting an integral part of a teacher's duties, is within the term 'wages' and is therefore a mandatory subject of bargaining." Id. at 784, 485 A.2d 1038 (emphasis added). We owe deference to our holding in Berlin, which the parties agree is controlling precedent. See Brannigan v. Usitalo, 134 N.H. 50, 53, 587 A.2d 1232 (1991).
We must also afford deference to the PELRB on certain matters due to the standard of review established by the legislature. See RSA 541:13 (standard of review governing appeals brought pursuant to RSA chapter 541); RSA 273-A:14 (2010) (aggrieved party can appeal PELRB's final order pursuant to RSA chapter 541). We do not owe deference to the PELRB on issues of law, however. See Appeal of Hillsborough County Nursing Home, 166 N.H. 731, 733, 103 A.3d 1186 (2014). We review the PELRB's legal rulings, including its interpretation of statutes and precedent, *198 de novo. See id. ; Appeal of N.H. Dep't of Transportation, 144 N.H. 555, 556-58, 744 A.2d 1128 (1999) (reversing PELRB on issue of statutory interpretation); Appeal of State of N.H., 138 N.H. 716, 719-20, 647 A.2d 1302 (1994) (abandoning this court's "policy of deferring to the PELRB on issues of law," including statutory interpretation, and "adopt[ing] a strict adherence to the standard of review set forth in RSA 541:13"); cf. Appeal of State Employees' Assoc. of N.H., 156 N.H. 507, 510-11, 939 A.2d 209 (2007) (affirming PELRB's decision because its reliance upon prior case with very similar "legally significant facts" was not "erroneous or unreasonable," but overruling that prior case prospectively).
Here, the PELRB conducted the "integral part" inquiry from Berlin and concluded, based upon its factual findings, that the tutoring in this case is distinguishable from the extracurricular duties involved in Berlin. Because the PELRB applied the correct inquiry from Berlin, its ruling of law on this issue is not erroneous. Absent an error of law, we cannot overturn the PELRB's decision "unless we are satisfied, by a clear preponderance of the evidence, that it is unjust or unreasonable." Appeal of Prof'l Fire Fighters of Hudson, 167 N.H. 46, 51, 104 A.3d 1063 (2014) ; accord RSA 541:13 ; see also Appeal of Hollis Educ. Assoc., 163 N.H. 337, 340, 42 A.3d 863 (2012) ("To succeed on appeal, the association must show that the PELRB's decision is unlawful, or clearly unjust or unreasonable.").
Although the majority acknowledges this deferential standard of review at the outset of its analysis, it does not adhere to that standard in reviewing the PELRB's decision on the first issue. The majority's opinion concludes that "the PELRB erred as a matter of law" because, in the majority's view, "the tutoring services at issue here are, if anything, more closely related to the normal adjunct faculty members' duties than the extracurricular activities in Berlin were related to the teachers' regular duties."
Yet the PELRB explained in detail the basis for its conclusion that this case is "factually distinguishable" from Berlin"in a number of significant respects." Unlike the full-time teachers who taught school children in the Berlin public school district, see Berlin, 125 N.H. at 780, 485 A.2d 1038, the adjuncts at CCSNH are "part-time faculty" who "are responsible for teaching a specific assigned course" to college students. The adjuncts are also responsible for making themselves available for what the PELRB termed "limited consultation" with their students-"before or after class, or by appointment." (Quotation omitted.) There is no expectation that adjuncts tutor any of the students, through the Academic Center for Excellence (ACE) or otherwise. The PELRB also noted that the activity at issue, tutoring, "is clearly not an extracurricular activity like a sport or other student activity at issue in [ Berlin ]. Instead, it is merely a service CCSNH offers to students who would like help completing class assignments." Another factual distinction is that, in Berlin, it was not the superintendent's "practice" to "fill extracurricular positions outside of the bargaining unit," even though this was permissible, id. at 781, 485 A.2d 1038 (quotation omitted), whereas tutors at CCSNH are not only adjuncts but full-time professors, plus students "occasionally" serve as " 'peer' tutors." Indeed, the director of ACE testified that "most" of the tutors she hires are not current adjuncts. Finally, and perhaps most importantly, the PELRB found that community college adjunct professors at CCSNH are not responsible for the "training of a child for citizenship and leadership," as was the case with the school children in Berlin.
*199 Id. at 782, 485 A.2d 1038. For all of these reasons, the PELRB concluded that "tutoring cannot fairly be classified as 'an integral part' of an adjunct's duties."
Based upon these findings, which are supported by the record, I cannot say that the PELRB's conclusion on this issue is unjust or unreasonable. See Appeal of Town of Moultonborough, 164 N.H. 257, 261, 55 A.3d 965 (2012). Accordingly, in my view, the Union has failed to meet its burden of demonstrating that the PELRB's decision on this issue is "clearly unjust or unreasonable." Hollis Educ. Assoc., 163 N.H. at 340, 42 A.3d 863 (emphasis added). Under the circumstances, this court cannot substitute its judgment for that of the PELRB on this issue. See Moultonborough, 164 N.H. at 261, 55 A.3d 965 ; Appeal of Laconia Patrolman Assoc., 164 N.H. 552, 555, 62 A.3d 787 (2013) ("This court is not free to substitute its judgment on the wisdom of an administrative decision for that of the agency making the decision." (quotation omitted) ). Therefore, I respectfully dissent from Section IIA of the majority's opinion.